AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Plaintiff-Appellant,

v.

James W. SCHMITZ, Jr. and Jody L. Schmitz,
Defendants-Respondents,†

WAUKESHA STATE BANK, Defendant.

Court of Appeals

*No. 2010AP16. Submitted on briefs September 14, 2010.
—Decided October 20, 2010.*

2010 WI App 157

(Also reported in 793 N.W.2d 111.)

† Petition for Review denied 3-15-11.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert C. Burrell* and *Joshua B. Cronin* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

On behalf of the defendants-respondents James W. Schmitz, Jr., and Jody L. Schmitz, the cause was

submitted on the brief of *Christopher P. Riordan* of *von Briesen & Roper, S.C.* of Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Fine, J.

¶ 1. BROWN, C.J. James, Jr., and Jody Schmitz argue that they were insured for their losses when their home collapsed during heavy rains in June 2008. They acknowledge that their insurance policy with American Family Mutual Insurance Company excluded damages resulting from surface water and flooding. But they assert that the policy excepts collapses resulting from defective methods of construction and claim that their failure to build a retaining wall when adding onto their house caused rain to flow under their crawlspace, thus causing the damage—not surface water or flooding as independent forces. The trial court agreed, but we reverse. We side with American Family's position that its anti-concurrent cause provision plainly excludes coverage if an excluded risk causes the loss regardless of the contributing causes at issue here. And the undisputed facts show that water was the driving force behind the damage. Therefore, the policy's water exclusion, in combination with the anti-concurrent clause that precedes it, excludes coverage in this case.

## FACTS

¶ 2. The weekend before June 9, 2008, as much as 8.45 inches of rain fell in the Milwaukee area. At the time, Schmitz[1] was making an addition to his home in Pewaukee. The earth around the rear side of the house had been excavated to construct a new basement.

---

[1] Though both James and Jody Schmitz are defendants in this case, we will refer to them as simply "Schmitz" throughout this opinion.

Specifically, the earth around the existing crawl space foundation had been removed, which created a two-foot space between the existing crawl space foundation and a new basement wall. There was no retaining wall in place, which according to American Family's expert, was in violation of WIS. ADMIN. CODE § COMM 21.14.[2] During the heavy rainfall, water came through the excavated area and washed soil out from underneath the footings of the home, at which point the foundation collapsed.

¶ 3. At the time of the collapse, Schmitz had a homeowner's insurance policy through American Family. The policy included a provision for supplementary coverage in case of collapse if the collapse was "caused only by one or more of the following" enumerated perils. Those perils included "use of defective . . . methods in construction." However, the same policy excluded loss due to water damage and loss due to earth movement. Both of those exclusions were preceded by an anti-concurrent cause exclusion stating that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."

¶ 4. American Family filed a declaratory judgment complaint on June 26, 2008, to declare the rights of the parties under the insurance contract. It argued that Schmitz's loss was not covered because the damage was not caused *only* by the use of defective construction methods—it was also caused by water and earth movement. Alternatively, it argued that the loss was plainly excluded by the water and earth movement exclusions because the anti-concurrent cause provision makes it

[2] WISCONSIN ADMIN. CODE § COMM 21.14 requires that "provisions" be taken to prevent collapse of the footing or foundation prior to any excavation below the footing or foundation.

irrelevant whether a lack of retaining wall contributed to the loss. In response, Schmitz asserted that the loss was clearly covered by the supplementary coverage for collapse because the lack of retaining wall constituted defective methods of construction under the policy. He also argued that the water damage exclusion did not apply because the water that contributed to the collapse of the house was not covered by the exclusion.

¶ 5.  Both parties moved for summary judgment. The trial court found in favor of Schmitz, stating that if a retaining wall had been present, the damage would not have occurred and therefore the loss was covered by the supplementary coverage. American Family appeals.

## DISCUSSION

■

¶ 6.  Summary judgment is appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987); Wis. Stat. § 802.08(2) (2007–08). We review summary judgment decisions de novo, without deference to the trial court. *Green Spring Farms*, 136 Wis. 2d at 315–17.

¶ 7.  Both parties argue, and we agree, that there are no material factual disputes. Our holding in this case relates solely to the interpretation of the water damage exclusion in Schmitz's insurance contract with American Family.[3] The facts we view as relevant are as follows:   Schmitz's house collapsed during heavy rains

---

[3] As previously mentioned, American Family also claims that the earth movement exclusion applies. Our holding that the water damage exclusion does apply makes discussion of that issue unnecessary. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334

in June 2008, the collapse occurred while Schmitz was excavating around the foundation of his home without a retaining wall, and the collapse occurred when water from the heavy rain saturated the soil and moved it from underneath the house.

██

¶ 8.  Because the material facts are undisputed, we need only address how the law applies to these undisputed facts. *See Green Spring Farms*, 136 Wis. 2d at 315. Review of interpretation of an insurance contract, like review of summary judgment, is de novo. *See Sass v. Acuity*, 2009 WI App 32, ¶ 4, 316 Wis. 2d 752, 765 N.W.2d 582. In a claim for coverage under an insurance policy, the insured bears the burden of showing initial coverage for the loss. *Estate of Ermenc v. American Family Mut. Ins. Co.*, 221 Wis. 2d 478, 481, 585 N.W.2d 679 (Ct. App. 1998). If that burden is met, the burden shifts to the insurer to show that a policy exclusion nonetheless precludes coverage of the loss. *Id.*

¶ 9.  Schmitz argues that he can show initial coverage for the collapse based on the Supplementary Coverages he purchased with his premiums. That part of the policy states, in pertinent part:

> **We** provide the following Supplementary Coverages . . . subject to all terms of this policy, except where modified by the Supplementary Coverage.
>
> **1. Collapse. We** cover risk of direct physical loss . . . involving collapse of a building or any part of a building *caused only by one or more of the following:*
>
> . . . .

N.W.2d 559 (Ct. App. 1983) (if resolution of one issue disposes of appeal, we need not address other arguments raised by appellant).

f.  use of defective material or methods in construction, reconstruction, renovation or remodeling if the collapse occurs during the course of the construction, reconstruction, renovation or remodeling.

(Emphasis added.) Schmitz argues that his failure to build a retaining wall constituted defective methods of construction under the policy. He points out that American Family's expert opined that this failure was a violation of Wis. Admin. Code § Comm 21.14 and that a properly constructed wall could have prevented the collapse.

¶ 10.  We assume, without holding, that Schmitz did meet his burden to prove initial coverage. On that assumption, the burden shifts to American Family to show that a policy exclusion applied. *See Estate of Ermenc*, 221 Wis. 2d at 481. To meet its burden, American Family argues that the water damage exclusion, in combination with the anti-concurrent cause provision preceding it, preclude coverage.

¶ 11.  The water damage exclusion reads as follows:

## EXCLUSIONS – SECTION 1

**PART A**

The following exclusions apply to . . . the Supplementary Coverages . . . . **We** do not insure for loss caused directly or indirectly by any of the following. *Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.*

. . . .

**9. Water Damage**, meaning:

a.  flood, surface water, waves, tidal water or overflow of a body of water, from any cause.

. . . .

> c. regardless of its source, water below the surface
> of the ground. This includes water which exerts
> pressure on or flows, seeps or leaks through any
> part of a building or other structure, sidewalk,
> driveway or swimming pool.

(Emphasis added.)

¶ 12. Schmitz acknowledges that it is "undisputed that water caused the earth to move from underneath the footings of the Schmitz home which led to the collapse of the home." However, he argues that the water in question was not surface water or any sort of water that falls within the policy exclusion definition of water damage. He makes two separate arguments to support that assertion. First, he argues that the water which caused the damage was rain water, not surface water, and was therefore not excluded by the policy.[4] Second, he argues that any water that was surface water lost its character as such when its course was altered by a trench on his property.[5]

---

[4] In his brief, Schmitz appears to make another, related argument—that the water was not surface water because it penetrated too deeply into the ground to cause the damage. He states that "[a]s rain had to flow well below the surface, the water that saturated the soil beneath the footings of the Schmitz home cannot be defined as 'surface water' for the purpose of the water damage exclusion." We do not see the relevance of this argument because the definition of water damage in the policy also includes "regardless of its source, water below the surface of the ground."

[5] Again, Schmitz makes a second, similar argument—that the water that caused the collapse ceased to be surface water when it combined with soil prior to the collapse, thus changing its composition. *See State Farm Lloyds v. Marchetti*, 962 S.W.2d 58, 61 (Tex. App. 1997) (holding that water that had mixed with

271

*Definition of "surface water"*

¶ 13.    Before we can address Schmitz's arguments, we must define the term "surface water." The parties did not point us to, and we did not find, any binding Wisconsin case law defining surface water.[6] This is obviously because the issue has not come before Wisconsin state courts until now.[7]

---

sewage was not covered by a flood water exclusion even if flood water was a proximate cause for the damage). We do not think this argument is worth serious discussion. If surface water, which by definition flows *on the ground,* were to lose its character as surface water simply by mixing with soil, it would not exist at all.

[6] We are aware of one federal case interpreting Wisconsin law, *Atlantic Mutual Insurance Companies v. Lotz,* 384 F. Supp. 2d 1292, 1302 (E.D. Wis. 2005), that uses a dictionary to define surface water as "natural water that has not penetrated much below the surface of the ground." (Citing WEBSTER'S THIRD NEW INT'L DICTIONARY 2300 (1981)).

[7] While it is doubtless true that Wisconsin has not been immune to surface water prior to 2008, this 2008 event may be the reason why we need to define surface water now. We note that one expert in this case stated that the June 2008 rainfall in southeastern Wisconsin was a "500–year storm event." The online Dictionary of Wisconsin History describes the 2008 floods as follows:

> During the first half of June, 2008, seven southern counties received more than a foot of rainfall, as daily precipitation records were set 114 times in Wisconsin cities and towns . . . . Unfortunately, record snowfalls the previous winter had left historic high streamflows across much of the state. The combination of the two forces led to flooding of historic proportions in the watersheds of the Mississippi and Wisconsin rivers . . . . Thirty-one Wisconsin counties were declared disaster areas, more than 40,000 homes and 5,000 businesses were damaged; state officials estimated the total damage at more than $1.2 billion.

Wisconsin Historical Society, *Floods in Wisconsin,* WISCONSIN-HISTORY.ORG,              .

¶ 14.  We choose to adopt the definition used in *State ex rel. State Fire and Tornado Fund of the North Dakota Insurance Department v. North Dakota State University*, 694 N.W.2d 225, 230 (N.D. 2005):

> [Surface water is] water which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such diffused state, and which follows no defined course or channel, which does not gather into or form a natural body of water, and which is lost by evaporation, percolation, or natural drainage.

(Citing 5 APPLEMAN INSURANCE LAW AND PRACTICE § 3145 at 463 (1970)). Using this definition, which is consistent with the ones used by other jurisdictions,[8] we do not find the term to be ambiguous.

### Surface water versus rain water

¶ 15.  As stated above, Schmitz argues that the water that contributed to the collapse of his home was rain water, not surface water. In support of his argument, Schmitz cites two cases decided under Wisconsin law, *Arnold v. Cincinnati Insurance Co.*, 2004 WI App 195, 276 Wis. 2d 762, 688 N.W.2d 708, and *Atlantic Mutual Insurance Companies v. Lotz*, 384 F. Supp. 2d

---

http://www.wisconsinhistory.org/dictionary/index.asp?action=viewterm_id=14907search_term=flood (last visited Nov. 11, 2010) (citations omitted).

[8] *See Heller v. Fire Ins. Exch.*, 800 P.2d 1006, 1008–09 (Colo. 1990); *Smith v. Union Auto. Indem. Co.*, 752 N.E.2d 1261, 1267 (Ill. App. Ct. 2001); *Marchetti*, 962 S.W.2d at 61. For more detail, *see State Fire and Tornado Fund of the North Dakota Insurance Department v. North Dakota State University*, 694 N.W.2d 225, 230 (N.D. 2005).

1292 (E.D. Wis. 2005). His argument appears to be that according to these cases, the definition of "surface water" in water damage exclusion clauses does not include rain water.

¶ 16. American Family argues that these cases are inapplicable because "in those cases, the rainwater did not travel along the ground's surface." We agree. Both *Arnold* and *Lotz* deal with damage to houses caused by rain that entered the house without ever touching the ground. *See Arnold*, 276 Wis. 2d 762, ¶¶ 36, 41 & n.9 (holding that "surface water" exclusion does not include damage done by rain coming in through windows); *Lotz*, 384 F. Supp. 2d at 1302 (holding that rain water infiltration from a window is not "surface water"). Neither of these cases supports the proposition that water on the ground is not surface water merely because it once fell out of the sky as rain. To limit the definition of surface water to water that does not originate as rain would leave the term surface water without much meaning.

¶ 17. LEE R. RUSS & THOMAS F. SEGALLA, 11 COUCH ON INSURANCE § 153:50 (3d 2010), offers a useful distinction between surface water and rain water:

> [S]urface water is distinguished from rain by its character as water on the ground. Rain, on the other hand, has been defined as "water falling from the sky."
>
> [D]amage from water flowing on the earth onto the insured's property, or into the insured's building, will generally constitute damage from surface water. Damage from water naturally falling from the sky onto the insured's property, or into the insured's building, will generally constitute damage from rain. (Footnotes omitted).

¶ 18. Using the distinction in COUCH ON INSURANCE, the water that flowed onto Schmitz's property clearly was surface water "flowing on the earth," not rain water "falling from the sky." *See id.* Therefore, we hold that once the rain fell to the ground, it became surface water that was covered by American Family's water damage exclusion.

## The "Defined Channels" Exception

¶ 19. Schmitz also argues that any water that was surface water ceased to be so when its course was affected by a "trench" on his property, the space between his existing crawl space and the addition. In support of his argument, he cites a Colorado case, *Heller v. Fire Insurance Exchange*, 800 P.2d 1006 (Colo. 1990). In *Heller*, the Colorado Supreme Court held, in essence, that water diverted by humanly created trenches ("defined channels") had lost its character as surface water. *Id.* at 1009. In that case, the trenches were dug by an unknown person or persons and the insured's property had never been affected by spring runoff in the ten years before the trenches were discovered. *Id.* at 1007. The trenches were "fifteen to twenty feet long, three feet wide, [and] six inches deep." *Id.* They "diverted the regular path of the melted snow over a natural ridge." *Id.* at 1009. Schmitz asserts that this case is like *Heller*, and the water ceased to be surface water when it was diverted by the trench separating the addition from the pre-existing crawl space on his property.

¶ 20. American Family points out that while the holding in *Heller* could be interpreted quite broadly, other jurisdictions have limited this "defined channels" exception cases where the channels are created for the purpose of diverting water. We find the reasoning in *Smith v. Union Automobile Indemnity Co.*, 752 N.E.2d

275

1261, 1267–68 (Ill. App. Ct. 2001) to be particularly useful. The court in that case pointed out that if we interpret *Heller* to mean that surface water must be "completely untouched or unaffected by [human-made] structures . . . it would be nearly impossible for surface water to exist, given the highly developed state of our society and the fact that few places without roads or other [human-made] structures exist today." *Smith v. Union*, 752 N.E.2d at 1267–68.

¶ 21.    We decline to adopt or reject the "defined channels" exception to the definition of surface water in this case because even if we were to adopt *Heller*, we agree with American Family that it is quite distinguishable from the facts of this case. We agree with the reasoning in *Smith v. Union*—a holding that any water that touches something humanly created ceases to be surface water would make a surface water exclusion virtually useless. Unlike in *Heller*, the "trench" in this case, while humanly created, was not created for the purpose of diverting water. Because of that, we do not believe that the trench on Schmitz's property created a "defined channel" as outlined in *Heller*.

¶ 22.    So far, we have established that the water that flowed into the Schmitz home was surface water once it touched the ground, and it did not stop being surface water when it got to the trench on Schmitz's property. We hold, therefore, that the water that washed away the earth under the Schmitz home was surface water as defined in Schmitz's policy with American Family. Still, one issue remains—whether American Family must cover the damage because a covered risk (defective methods of construction) may have contributed to the loss.

*The anti-concurrent cause provision*

¶ 23.   For the purpose of this opinion, we have assumed that Schmitz was able to show that the lack of retaining wall was a covered risk that contributed to the damage. On that assumption, there is damage caused by a combination of a covered risk (defective methods of construction) and an excluded risk (water damage). American Family argues that the anti-concurrent cause provision resolves this issue in its favor. The anti-concurrent cause provision, which precedes all of the exclusions in the Schmitz insurance policy, states that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."

¶ 24.   Once again, binding Wisconsin cases have not addressed this particular situation.[9] Under the "independent concurrent cause" rule, Wisconsin courts *have* previously held that where there are multiple causes for a loss, some of which are insured and others of which are excluded, the insured risk prevails over the excluded risk. *See Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 331, 531 N.W.2d 376 (Ct. App. 1995) (citing *Kraemer Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 570, 278 N.W.2d 857 (1979)). For the rule to apply, the covered cause "must provide the basis for a cause of action in and of itself and must not

---

[9] We are aware of one federal case interpreting Wisconsin law, *Lotz*, which, noting an absence of authority, refused to hold that an anti-concurrent clause preceding a surface water exclusion violated Wisconsin public policy. *See Lotz*, 384 F. Supp. 2d at 1304. We likewise could not locate any Wisconsin state cases addressing the issue.

require the occurrence of the excluded risk to make it actionable." *Smith v. State Farm*, 192 Wis. 2d at 332.

¶ 25. However, as we pointed out in *American Motorists Ins. Co. v. R&S Meats, Inc.*, 190 Wis. 2d 196, 211, 526 N.W.2d 791 (Ct. App. 1994), cases that established that rule did not include an analysis of the anti-concurrent cause provision. American Family asks us to adopt a rule whereby the anti-concurrent cause provision operates to preclude coverage whenever an excluded risk contributes to a loss, regardless of any other contributing causes. Schmitz expressly declined to respond to this argument, stating that he "do[es] not address the anti-concurrent causation argument, as [he] do[es] not believe surface water as interpreted by the courts was a cause of the collapse of their home or a peril excluded by the American Family policy."

¶ 26. We need not decide the effect of the anti-concurrent cause provision on the independent concurrent cause rule in this opinion because even using the independent concurrent cause analysis, Schmitz loses this argument. If no water had come through the Schmitz home, the lack of retaining wall would have been irrelevant because there was no damage until the water came through. In other words, the covered risk (defective methods of construction) clearly would not have been actionable without the occurrence of the excluded risk (surface water washing out the earth underneath the home). Defective methods of construction did not really cause the *damage* so much as it caused a failure to prevent it.

*By the Court.*—Order reversed.