**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 21, 2019**

**Sheila T. Reiff
Clerk of Court of Appeals**

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1234**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018SC9002

**IN COURT OF APPEALS
DISTRICT IV**

WILLIAM LOUIS HUGHES,

    PLAINTIFF-APPELLANT,

V.

ALLSTATE INDEMNITY COMPANY,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: WILLIAM E. HANRAHAN, Judge. *Affirmed*.

¶1    FITZPATRICK, P.J.[1]    William Hughes appeals an order of the circuit court dismissing Hughes' small claims action against Hughes' insurer, Allstate Indemnity Company.  Hughes sued Allstate, alleging that losses Hughes

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

sustained when water from an outside spigot seeped into his basement are covered under a homeowners insurance policy issued to Hughes by Allstate. The circuit court concluded that provisions in the policy precluded coverage for Hughes' loss. I affirm.

## BACKGROUND

¶2    There is no dispute concerning the following facts.

¶3    Hughes was out of town between February 17, 2017, and March 4, 2017. Some time during that time period, someone attached a hose to an outside spigot on Hughes' house and turned the spigot on, without Hughes' permission.[2] The spigot remained on for an unknown period of time until it was discovered by Hughes' daughter. During the time the spigot was on, water seeped into Hughes' basement, causing damage to wood paneling and carpet.

¶4    At the time Hughes' basement sustained water damage, Hughes' residence was insured under a homeowners policy issued by Allstate. The policy provided coverage for "sudden and accidental direct physical loss to [Hughes' residence] … except as limited or excluded in [the] policy." Relevant here, the

---

[2] On appeal, Hughes characterizes this as vandalism. Vandalism is damage that is caused intentionally. *See I.V. v. State*, 109 Wis. 2d 407, 412, 326 N.W.2d 127 (Ct. App. 1982). At trial, Hughes' trial counsel informed the court that children in Hughes' neighborhood had admitted to Hughes that they had hooked a hose to Hughes' spigot in order to get a drink of water, but at that time the water was frozen and no water came out of the hose. The spigot was not shut off and warm temperatures caused the frozen water to melt, resulting in the water running freely from the spigot. The circuit court determined that the children's actions did not rise to the level of vandalism. Hughes does not challenge that determination. However, the parties did not dispute that, regardless of how the children's actions are characterized, water seeping into the basement from the spigot constitutes a sudden occurrence for which an initial grant of coverage is provided under Hughes' homeowners policy. Accordingly, whether the children's conduct was or was not vandalism is not relevant to the resolution of this appeal.

policy excluded loss "consisting of or caused by … [w]ater … on or below the surface of the ground, regardless of its source ….  This includes water … which … flows, seeps or leaks through any part of the **residence premises**."  I will refer to this as the "water exclusion."  In addition, the policy contained the following provision, which I will refer to as the anti-concurrent cause provision:  "**We** do not cover loss to covered [Hughes' residence] … when:  a) there are two or more causes of loss to the covered property; and b) the predominant cause(s) of loss is (are) excluded …."

¶5     Hughes filed a claim under his homeowners policy with Allstate for losses he sustained as a result of the water seepage.  Allstate denied Hughes' claim, and Hughes filed a small claims action against Allstate for $2,356.84, alleging that his loss was covered under the policy.

¶6     At trial, Allstate conceded that the policy provided an initial grant of coverage for the damage caused to Hughes' basement from the water seepage.  However, Allstate argued that Hughes' loss is precluded because the loss was "predomina[tely]" caused by water.  Allstate argued that the water exclusion precludes coverage for losses caused by water, and the anti-concurrent cause provision precludes coverage for the "predominant cause[]" of the insured's loss where there are concurrent causes to the loss.  The circuit court agreed with Allstate and dismissed Hughes' claim.  Hughes appeals.

## DISCUSSION

¶7     Hughes contends the circuit court erred in concluding that the loss Hughes sustained to his residence from water seeping into the basement from an outside spigot that was turned on and left on by an unknown individual(s), without Hughes' permission, is not a covered loss under the terms of Hughes' homeowners

3

policy. Below, I set forth the standard of review and the principles that govern judicial interpretation of an insurance contract, and I then address the parties' arguments and conclude that Hughes' loss is not covered under the policy.

## I. Standard of Review and Governing Principles.

¶8 The interpretation of an insurance contract presents a question of law that an appellate court reviews de novo. *Zurich Am. Ins. Co. v. Wisconsin Physicians Serv. Ins. Corp.*, 2007 WI App 259, ¶11, 306 Wis. 2d 617, 743 N.W.2d 710. "Judicial interpretation of … an insurance policy[] seeks to determine and give effect to the intent of the contracting parties." *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. Absent any ambiguities in the policy, "court[s] will not apply the rules of construction to rewrite the language of an insurance policy to bind an insurer to a risk which it did not contemplate and for which it did not receive a premium." *Wilson Mut. Ins. Co. v. Falk*, 2014 WI 136, ¶25, 360 Wis. 2d 67, 857 N.W.2d 156. In addition, undefined terms in an insurance policy are construed by the court consistent with what a reasonable insured would expect, giving the terms their ordinary and accepted meaning. *See Acuity v. Bagadia*, 2008 WI 62, ¶13, 310 Wis. 2d 197, 750 N.W.2d 817 ("We interpret undefined words and phrases of an insurance policy as they would be understood by a reasonable insured."); *Doyle v. Engelke*, 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998) (undefined terms in an insurance policy are given their common and every day meaning), *overruled on other grounds by Talley v. Mustafa Mustafa*, 2018 WI 47, 381 Wis. 2d 393, 911 N.W.2d 55. And, exclusions are construed narrowly and against the insured. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990).

¶9      Courts engage in a three-step analysis to determine whether an insurance policy provides coverage for a specific loss.  First, the court determines whether the insurance policy makes an initial grant of coverage for the insured's claim.  *American Girl*, 268 Wis. 2d 16, ¶24.  If the claim triggers an initial grant of coverage, the court next examines the policy's exclusions to determine whether any exclusion precludes coverage of the claim.  *Id.*  Each exclusion is analyzed separately and the inapplicability of one exclusion will not reinstate coverage where a different exclusion has precluded coverage.  *Id.*  If coverage is precluded by an exclusion, the court next determines whether an exception to that exclusion reinstates coverage.  *Id.*  However, the applicability of an exception to an exclusion will not reinstate coverage if a provision in the policy otherwise precludes coverage of the insured's claim.  *Id.*

## II.  Hughes' Loss is Not Covered Under the Homeowners Policy.

¶10      Hughes argues, and Allstate concedes, that Hughes' homeowners policy provides an initial grant of coverage for Hughes' loss.  Accordingly, the next step in the analysis is to determine whether an exclusion in the policy precludes coverage.  *See id.*  Allstate bears the burden of showing that, notwithstanding an initial grant of coverage, a policy exclusion precludes coverage for Hughes' loss.  *American Family Ins. Co. v. Schmitz*, 2010 WI App 157, ¶8, 330 Wis. 2d 263, 793 N.W.2d 111.

¶11      Allstate argues that the water damage exclusion in combination with the anti-concurrent cause provision preclude coverage for Hughes' loss.  For context, I repeat those provisions.  The water damage exclusion reads as follows:

**Losses We Do Not Cover …:**

> **We** do not cover loss to the property … consisting of or caused by:
>
> ….
>
> 4. Water … on or below the surface of the ground, regardless of its source. This includes water … which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

The anti-concurrent cause provision reads as follow:

> **We** do not cover loss to covered property … when:
>
> a) there are two or more causes of loss to the covered property; and
>
> b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 22 [].

¶12 Allstate argues that Hughes' loss resulted from two causes: (1) the turning on and leaving on of the spigot; and (2) water. Allstate argues that damage caused by water is excluded under the water exclusion, and that water was the "predominant cause[]" of Hughes' loss. Allstate argues that because the predominant cause of Hughes' loss, water, is excluded under the water exclusion, Hughes' loss is precluded from coverage under the policy.

¶13 Hughes does not dispute Allstate's assertion that water was a cause of the damage to his basement or that water is an excluded risk under the policy. Instead, Hughes argues that water was *not* the "predominant cause[]" of his loss. Hughes argues that the actions of the person turning on the spigot and leaving it on was the "predominant cause[]" of his loss. Hughes argues that, because turning on and leaving on the spigot is not an excluded cause under the policy, the anti-concurrent cause provision does not combine with the water exclusion to preclude his loss from coverage.

6

¶14 The parties agree that there were two causes to Hughes' loss. The crux of the dispute in this case is which of those causes was the "predominant cause[]." Stated another way, whether Hughes' claim is barred by the water exclusion in conjunction with the anti-concurrent cause provision depends on whether water or turning on and leaving on the spigot is the "predominant cause[]" of Hughes' loss. To resolve this issue, I must first determine what the term "predominant cause[]" means. Before I begin, I note that neither party asserts that the term "predominant cause[]" is ambiguous, and I conclude that it is not. Accordingly, I do not apply the rule of construction that the term "predominant cause[]" must be construed in favor of coverage. *See Atlantic Mut. Ins.*, 155 Wis. 2d at 811 (ambiguous language in an insurance policy must be construed in favor of coverage).

¶15 The policy does not define the term "predominant cause[]." When a term is not defined by an insurance policy, courts construe the term "according to [its] plain and ordinary meaning[] as understood by a reasonable person in the position of the insured." *Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶40, 338 Wis. 2d 761, 809 N.W.2d 529. The parties do not point me to, and I did not find any, binding Wisconsin case law defining the term "predominant cause[]" or the word "predominant." Accordingly, I look to the dictionary to ascertain the commonly understood meaning of the term. *Cf. Erdman v. Jovoco, Inc.*, 173 Wis. 2d 273, 279, 496 N.W.2d 183 (Ct. App. 1992) (stating that reasonable persons might look to a dictionary to define words).

¶16 The word "predominant" is defined by Black's Law Dictionary as: "having superior … influence, and pervasiveness." BLACKS' LAW DICTIONARY 1368 (10th ed. 2014). The term "predominant" is similarly defined by Merriam-Webster Online, http://www.merriam-webster.com/dictionary/predominant (last

visited November 18, 2019) as "having superior strength, influence, or authority," and by the AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1427 (3d ed. 1996) as "[h]aving greatest ascendancy, importance, influence, authority, or force." *See also* WIS. STAT. § 968.075(1)(e) (defining "[p]redominant aggressor" as "the most significant, but not necessarily the first").

¶17   Hughes acknowledges the lexical meaning of the term "predominant," but urges this court to adopt a different meaning. Hughes argues that in the context of insurance, the term "predominant cause[]" "is understood as interchangeable with [the doctrine of] 'efficient proximate cause,'" which is "the peril that sets into motion a series of events that causes the loss at issue." Thus, according to Hughes, "predominant cause[]" means "the peril that sets into motion [the] series of events that cause[] the [insured's] loss." In support, Hughes cites this court to various non-binding legal authorities that equate the term "predominant cause[]" with the doctrine of "efficient proximate cause." *See, e.g., Murray v. State Farm Fire and Cas. Co.*, 509 S.E.2d 1 (W.Va. 1998); *Bartholomew v. Cameron Ctry. Mut. Ins. Co.*, 882 S.W.2d 173 (Mo. Ct. App. 1994); *Frietze v. Allstate Ins. Co.*, No. CV 12-840 WJ/CG, 2013 WL 12119562 (D.N.M. Aug. 12, 2013).

¶18   Allstate disagrees with Hughes' correlation between the meaning of "predominant cause[]" and efficient proximate cause. Allstate instead argues that predominant cause means what the term is commonly defined to mean. That is to say, the cause that has the most import or influence in causing the resulting loss. I agree with Allstate.

¶19   Wisconsin courts have not adopted the doctrine of efficient proximate cause, and Hughes has not developed an argument as to why this court

should conclude that the term "predominant cause" has the same meaning as a doctrine not recognized in this state. Moreover, as previously stated, I must give the term its "plain and ordinary meaning[] as understood by a reasonable person in the position of the insured." *Hirschhorn*, 338 Wis. 2d 761, ¶40. Hughes has given me no reason to conclude that a reasonable insured would equate the term "predominant cause[]" with the legal doctrine of "efficient proximate cause" and understand both to mean the cause that sets in motion a chain of events that results in the insured's loss. Accordingly, I conclude that a reasonable insured would understand the term "predominant" to have the ordinary, lexical meaning. In other words, that a reasonable insured would understand "predominant cause[]" to mean the cause that is most important or influential to the resulting loss.

¶20 Allstate contends that water was the cause that was most important or influential in causing Hughes' loss. Hughes does not dispute Allstate's contention on appeal. Allstate's argument is thus taken as admitted. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (a proposition asserted by a respondent on appeal and not disputed by the appellant's reply is taken as admitted). Accordingly, I conclude that water was the predominant cause of Hughes' loss.

¶21 Hughes argues in the alternative that, even if water was the predominant cause of his loss, the anti-concurrent cause provision does not preclude coverage for his loss because that provision conflicts with the independent concurrent cause rule and the provisions is, therefore, unenforceable.

¶22 "The independent concurrent cause rule provides that '[w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even

though the excluded risk is a contributory cause.'" ***Seibert v. Wisconsin Am. Mut. Ins. Co.***, 2011 WI 35, ¶40, 333 Wis. 2d 546, 797 N.W.2d 484 (quoted source omitted). Hughes argues that, in ***Benke v. Mukwonago-Vernon Mut. Ins. Co.***, 110 Wis. 2d 356, 329 N.W.2d 243 (1982) and ***Kraemer Bros., Inc. v. United States Fire Ins. Co.***, 89 Wis. 2d 555, 278 N.W.2d 857 (1979), the Wisconsin Supreme Court "explicitly rejected the proposition that insurers [can] escape coverage for losses simply because an excluded risk paired with a covered risk to cause a loss." Hughes summarizes that, because the anti-concurrent cause provision in this policy "directly conflicts with the [independent concurrent cause rule] by allowing the insurer to deny coverage where coverage is required under the [independent concurrent cause rule]," the anti-concurrent cause provision is unenforceable.

¶23 Hughes did not raise this argument before the circuit court. Arguments raised for the first time on appeal may be deemed forfeited. *See **State v. Ndina***, 2009 WI 21, ¶¶ 29-31, 315 Wis. 2d 653, 761 N.W.2d 612. However, even if Hughes had preserved this argument, I would reject it.[3]

¶24 ***Benke*** and ***Kraemer Bros.*** concerned coverage under liability insurance policies where there were concurrent causes of a loss, one of which was covered under the policy and one of which was precluded by an exclusion in the policy. However, the policies in ***Benke*** and ***Kraemer Bros.*** did not contain anti-concurrent cause provisions like that contained in Hughes' homeowners policy. Consequently, the supreme court in ***Benke*** and ***Kraemer Bros.*** did not address the

---

[3] Because I conclude that the anti-concurrent cause provision is not void because that provision violates the independent concurrent cause rule, I do not address the parties' arguments concerning the applicability, in this case, of the independent concurrent cause rule.

effect an anti-concurrent cause provision has on coverage for a loss that has concurrent causes, one of which is covered and the other excluded, and those cases do not stand for the proposition that an anti-concurrent cause provision is invalid as a matter of law. Hughes has given me no reason to conclude that an insurer and insured are limited in their ability to negotiate concerning coverage where there are concurrent causes to a loss and to contractually limit the insurer's liability for such a loss under certain circumstances. According, I conclude that Hughes has not shown that the anti-concurrent cause provision is unenforceable.

## CONCLUSION

¶25 For the foregoing reasons, I conclude that water was the predominant cause of Hughes' loss and that Hughes' loss is precluded by the water exclusion in conjunction with the anti-concurrent cause provision. Accordingly, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

11