**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 14, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1426**

Cir. Ct. No. **2023CV64**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

IZRAEL P. WESTBROOK BY HIS GUARDIAN AD LITEM,
ROBERT A. PARSONS, NATHAN WESTBROOK, AND
REBECCA WESTBROOK,

   PLAINTIFFS-APPELLANTS,

 V.

DANIEL L. JONES AND QUARTZ HEALTH BENEFIT
PLANS CORPORATION,

   DEFENDANTS,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

   DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Crawford County: TIMOTHY J. GASKELL, Judge. *Affirmed.*

Before Graham, P.J., Kloppenburg, and Taylor, JJ.

¶1 GRAHAM, P.J. Izrael Westbrook was injured by a gun that belonged to Daniel Jones and was accidentally discharged at the residence Daniel shared with his son, Kahmeron Jones.[1] Based on the incident, Kahmeron was adjudicated delinquent for possessing a dangerous weapon while under the age of 18. Westbrook filed a personal injury lawsuit against the Joneses and their insurer, American Family Insurance Company, S.I. He appeals the circuit court's determination on summary judgment that the homeowner's policy issued by American Family does not provide coverage for this accident.

¶2 On appeal, Westbrook argues that the circuit court erred in concluding that American Family is not required to extend coverage to the Joneses based on a policy exclusion that precludes coverage for occurrences that arise out of, result from, or have a connection to a violation of criminal law for which the insured was adjudicated. We affirm.[2]

---

[1] We refer to Daniel and Kahmeron collectively as the Joneses, and individually by their first names.

[2] We originally issued this opinion on April 9, 2026, as an unpublished per curiam opinion. Following a motion by American Family and a second motion filed by counsel for American Family in other pending matters, *see* WIS. STAT. RULE 809.23(4)(c) (2023-24), we withdrew the per curiam opinion and now reissue it as an authored opinion that is recommended for publication.

All references to the Wisconsin Statutes are to the 2023-24 version.

One of the motions filed by American Family identified several persuasive arguments in favor of publishing this opinion, but it also made an argument that was unfounded. Specifically, the motion argued that publication is warranted because there have been no published Wisconsin appellate decisions that discuss "the enforceability" of a violation of law exclusion. This opinion discusses the interpretation and application of the policy language at issue, but Westbrook did not challenge the enforceability of the violation of law exclusion in this appeal, and our opinion does not address that topic.

**BACKGROUND**

¶3      The following facts are derived from the pleadings, depositions, and parties' answers to interrogatories, and are undisputed unless otherwise noted.

¶4      The accident that led to this lawsuit occurred at the Joneses' home on February 22, 2023.  Kahmeron and Westbrook were at the home that day without adult supervision.  At the time, Kahmeron was 12 years old and Westbrook was 13 years old.

¶5      Kahmeron's father, Daniel, owns several firearms that he keeps in his bedroom.  These firearms include a .357 Magnum pistol, which was the gun involved in the accident in this case.  Daniel's firearms and ammunition were not locked away or otherwise secured on the day of the accident.

¶6      At some point during the day, one of the boys took the gun from Daniel's bedroom and it discharged, resulting in an injury to Westbrook's ear. Westbrook and Kahmeron both contend that the shooting was an accident, but they dispute the precise events leading up to the shooting.  Westbrook testified that Kahmeron took the gun from Daniel's bedroom and pointed it at Westbrook during a game of hide and seek, and that the gun discharged when Westbrook attempted to "swat[]" it away.  In contrast, Kahmeron testified that Westbrook took the gun from Daniel's bedroom, and that it discharged when Kahmeron and Westbrook were both trying to grab it from Westbrook's waistband.

¶7      Westbrook's parents contacted police, and the State filed a juvenile petition against Kahmeron based on his involvement in the injury.  The petition alleged that Kahmeron "cause[d] bodily harm to [Westbrook], by the negligent use or handling of a dangerous weapon, contrary to [WIS. STAT. § ]940.24(1), … a

Class I Felony." This charge was later amended, and pursuant to a plea agreement, Kahmeron admitted to a misdemeanor charge of possession of a dangerous weapon by a person under the age of 18. *See* WIS. STAT. § 948.60. The juvenile court entered a dispositional order that adjudicated him delinquent.

¶8 At the same time that the juvenile proceedings were taking place, Westbrook filed a personal injury action against the Joneses and their homeowner's insurer, American Family. Westbrook alleged that his injuries were caused by Kahmeron's negligent use of a firearm and Daniel's negligent entrustment of a firearm to, and supervision of, Kahmeron. As we understand it, the claim against Daniel was based in part on his failure to securely store the weapons that he kept in his home.

¶9 American Family denied that the policy it issued to the Joneses provides coverage for this occurrence, and it moved for declaratory and summary judgment. American Family's argument was based in part on the "Violation Of Law" exclusion in the policy that addresses "any occurrence arising out of, resulting from, or in connection with" a "violation of any criminal law." The text of the exclusion clarifies that it applies to "violation[s] of any criminal law for which any insured … is convicted or adjudicated." American Family argued that the shooting occurred in connection with Kahmeron's possession of a firearm, which was a crime for which Kahmeron was adjudicated; therefore, American

Family argued, the policy excludes coverage for any liability that Daniel or Kahmeron have for Westbrook's injuries.[3]

¶10 The circuit court held a hearing at which both sides presented argument. Following the hearing, the court determined that the "Violation Of Law" exclusion applies and precludes coverage. The court entered an order granting the motions for declaratory and summary judgment and dismissing American Family from the lawsuit. Westbrook appeals.[4]

## DISCUSSION

¶11 Whether the circuit court correctly granted American Family's motions turns on the proper interpretation of the Joneses' insurance policy. Policy interpretation is a question of law that we review de novo. *See Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, ¶7, 269 Wis. 2d 204, 674 N.W.2d 665 (2003).

¶12 When interpreting an insurance policy, we construe policy language "from the perspective of a reasonable insured, giving the words used in the policy

---

[3] American Family also argued that a separate exclusion in the Joneses' policy, the "Imputed Liability" exclusion, precludes coverage for any claims against Daniel Jones. The circuit court determined that this exclusion does not apply, and American Family does not challenge this determination on appeal.

[4] The parties' briefs do not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended to its current form in 2021, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for efiling. The pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. Supreme Court Note, 2021, RULE 809.19.

their common and ordinary meanings." *Stubbe v. Guidant Mut. Ins. Co.*, 2002 WI App 203, ¶8, 257 Wis. 2d 401, 651 N.W.2d 318. If policy language is unambiguous, we apply the language as written and will not rewrite the policy "to bind the insurer to a risk which it did not contemplate and for which it has not been paid." *See Wisconsin Builders, Inc. v. General Ins. Co. of Am.*, 65 Wis. 2d 91, 103, 221 N.W.2d 832 (1974). However, if policy language is ambiguous, we construe any ambiguities "against the insurer, the drafter of the policy." *Hischhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶23, 338 Wis. 2d 761, 809 N.W.2d 529.

¶13 In determining whether the policy provides coverage for the Joneses' potential liability for Westbrook's injuries, we follow a well-established procedure. The first step is to determine "whether the policy's insuring agreement makes an initial grant of coverage." *American Fam. Mut. Ins. Co. v. American Girl*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65. If we determine that it does, the second step is to "examine the [policy's] exclusions to see whether any of them preclude coverage." *Id.* The third step, which is not implicated here, is to determine whether there is an exception to any applicable exclusion that reinstates coverage. *Id.* We consider the policy's initial grant of coverage and the pertinent exclusion, and we then address Westbrook's arguments that the policy language is ambiguous.

## I. Initial Grant of Coverage

¶14 Here, the Joneses are both "insureds" under the policy, which broadly provides that American Family will pay "compensatory damages for which an insured is legally liable because of bodily injury … caused by an occurrence covered by this policy." As relevant here, the policy defines

"occurrence" to mean "an accident … which results during the policy period in … bodily injury." There does not appear to be any dispute that under these terms, the policy makes an initial grant of coverage to the Joneses. That is, the parties appear to agree that there is an "occurrence" within the meaning of the policy.

¶15    American Family does not specifically identify the "occurrence" at issue here, but Westbrook contends that the "occurrence" is the "accidental shooting." We agree. As we have explained, for purposes of identifying the pertinent "occurrence," "[w]e must focus on the incident or injury that gives rise to the claim, not the plaintiff's theory of liability." *Berg v. Schultz*, 190 Wis. 2d 170, 177, 526 N.W.2d 781 (Ct. App. 1994); *see also* ***Bankert v. Threshermen's Mut. Ins. Co.***, 110 Wis. 2d 469, 480, 329 N.W.2d 150 (1983) (explaining that an "occurrence … is what is insured against—not theories of liability"). Here, the allegation is that the gun was discharged by accident, and that this accident resulted in bodily injury to Westbrook during the policy period for which the Joneses might be liable.

¶16    Thus, we agree with the parties that the accidental shooting is an "occurrence" that triggers an initial grant of coverage.

## II. The "Violation Of Law" Exclusion

¶17    We now turn to the second step of the procedure and examine the exclusions in the policy to determine if any of them "preclude coverage" for this occurrence. *See* **American Girl**, 268 Wis. 2d 16, ¶24. The policy contains a number of exclusions, including the "Violation Of Law" exclusion at issue here. As noted, that exclusion provides as follows: "[American Family] do[es] not cover any occurrence arising out of, resulting from, or in connection with" a "Violation

7

Of Law. This includes [a] violation of any criminal law for which any insured … is convicted or adjudicated[.]"

¶18 At least under the circumstances here, this exclusion is unambiguous. The terms "arising out of," "resulting from," or "in connection with" are not defined in the policy, but these are everyday terms that would be "commonly understood" by a reasonable insured. *See Lawver v. Boling*, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976); *Mikula v. Miller Brewing Co.*, 2005 WI App 92, ¶21, 281 Wis. 2d 712, 701 N.W.2d 613 ("words in a policy should be given their common, everyday meaning"); *Everson v. Lorenz*, 2005 WI 51, ¶15, 280 Wis. 2d 1, 695 N.W.2d 298 (providing that Wisconsin courts have "often relied on dictionary definitions for assistance" to determine how language in insurance policies would be understood by a reasonable person in the position of the insured). "Arising" means "[t]o come into being" or "originate";[5] "resulting" means "happen[ing] as a consequence";[6] and "in connection with" means "[i]n relation to," "with respect to," or "concerning."[7]

¶19 Moreover, the phrase is written using the disjunctive connector "or." Under the circumstances, this makes the exclusion quite broad: coverage is excluded if the occurrence arises out of a violation of law as defined in the exclusion, *or* if the occurrence results from such a violation, *or* if the occurrence

---

[5] *Arising*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=arise (last visited Mar. 23, 2026).

[6] *Resulting*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=resulting (last visited Mar. 23, 2026).

[7] *In Connection With*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=in+connection+with (last visited Mar. 23, 2026).

happens in connection with such a violation. Under the circumstances, an insured would reasonably understand this language to mean, at minimum, that coverage is excluded if an insured's violation of criminal law has some causal relationship to the occurrence, assuming that the insured ends up being adjudicated for that violation. This broad reading is consistent with how Wisconsin courts have construed similar phrases in insurance policies.[8]

¶20 Applying the language of this exclusion to the circumstances presented here, we conclude that coverage is excluded. *See Stubbe*, 257 Wis. 2d 401, ¶8 ("If the policy language is clear on its face, we will simply apply the policy terms."). Here, WIS. STAT. § 948.60 makes it a misdemeanor for any person who is under 18 years of age to possess a dangerous weapon; § 948.60 is part of Wisconsin's criminal code; and Kahmeron was adjudicated delinquent for violating § 948.60 in relation to the shooting. Moreover, there was indisputably a causal relationship between Kahmeron's criminal possession of a firearm and the shooting—the shooting occurred, at least in part, as a result of Kahmeron's criminal possession of the gun that day. Thus, based on the undisputed facts in the record, the "occurrence" at issue "ar[ises] out of, result[s] from, or [happens] in connection with" a violation of law for which Kahmeron was adjudicated.

¶21 Westbrook makes several arguments to the contrary, all of which turn on his contention that the policy language is ambiguous. If so, under our case

---

[8] *See Lawver v. Boling*, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976) ("As used in a liability insurance policy, the words 'arising out of' are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk[.]"); *Dhein v. Frankenmuth Mut. Ins. Co.*, 2020 WI App 62, ¶30, 394 Wis. 2d 470, 950 N.W.2d 861 ("we read 'in connection with' broadly and conclude that there must be a 'causal relationship' between the bodily injury caused, in whole or in part, … and the leased premises").

law, we would interpret the policy against American Family and in favor of coverage. *See **Hischhorn***, 338 Wis. 2d 761, ¶23. But as we now explain, none of these arguments about ambiguity have merit.

¶22 Westbrook argues that the term "criminal law" is susceptible to different meanings, and that a reasonable insured would not interpret the exclusion to apply to "any and all laws that fall under the [c]riminal [c]ode." In support, Westbrook argues that Wisconsin "criminalizes far more behaviors than the average person" would understand to be crimes, and he further argues that "most reasonable insureds would not expect such a broad exclusion." Rather, he contends, an insured would reasonably interpret the exclusion to be limited to crimes that he characterizes as the "big ones," which Westbrook defines to include "homicide, sexual assault, battery, theft," and any other "crimes that involve a depraved mind and/or malicious intent."

¶23 This argument is not persuasive. The exclusion explicitly states that it comes into play when the insured is convicted or adjudicated of violating "*any* criminal law." (Emphasis added.) Although an insured may not be knowledgeable about the full extent of the criminal code in this state, the policy language itself is unambiguous and cannot reasonably be read as being limited to a certain subset of crimes.[9]

---

[9] Westbrook cites our supreme court's decision in ***Frost v. Whitbeck***, 2002 WI 129, 257 Wis. 2d 80, 654 N.W.2d 225, in support of his argument that what constitutes a crime subject to the exclusion is ambiguous. ***Frost*** does not lend any support for Westbrook's argument. That case dealt with a "resident-relative" exclusion in a homeowner's insurance policy and considered whether the term "relative" was ambiguous as applied to a third cousin of the homeowner. *See id.*, ¶7. ***Frost*** had nothing to do with an exclusion based on a violation of the law.

(continued)

10

¶24      Westbrook also argues that the introductory phrase "any occurrence arising out of, resulting from, or in connection with" is ambiguous. Although we have explained that this language is reasonably understood as precluding coverage, at a minimum, if a violation of criminal law for which the insured is adjudicated has some causal relationship to the occurrence, Westbrook questions whether an insured would interpret this language so broadly. According to Westbrook, "another reasonable construction is that these phrases only refer to the act … that begins or starts the unbroken chain of causation." As applied here, Westbrook argues, the first act in the chain of causation was Daniel's failure to secure his firearms. He points out that "if Daniel Jones had not been negligent," Kahmeron could not have accessed and unlawfully possessed the gun and the shooting could not have occurred. As we best understand, the crux of Westbrook's argument is that because Kahmeron's violation of law was not the first act in the chain of causation, a reasonable insured might not interpret the shooting as arising out of, resulting from, or occurring in connection with a violation of the law. Thus, an insured might reasonably conclude that the "Violation Of Law" exclusion does not apply.

¶25      We reject this argument for at least the following reasons. First, Westbrook's alternative interpretation of the phrase "any occurrence arising out of, resulting from, or in connection with" is not "objectively reasonable." *See Hischhorn*, 338 Wis. 2d 761, ¶23 (we need not embrace "any grammatically plausible interpretation" when only one interpretation "comports with an insured's

---

Westbrook also cites several cases from other jurisdictions to support his argument. We are not bound by these cases, nor do we consider them on point in this matter. Among other things, the cases address policy language that differs from the policy language at issue here.

objectively reasonable understanding"). That is, Westbrook does not explain why the phrase could reasonably be construed as being limited to the first act in a chain of causation. And even if the term "arising out of" could arguably be understood as referring to the first act in a chain of causation, the remainder of the terms ("resulting from" and "in connection with") cannot reasonably be interpreted as being so limited. As we explained above, these terms are understood to have a broader connotation. *See supra* ¶¶18-20.

¶26 Second, to the extent that Westbrook is asking us to conclude that Daniel's negligence is an "independent concurrent cause" of his injury, we would reject that argument. *See **Smith v. State Farm Fire & Cas. Co.***, 192 Wis. 2d 322, 331-33, 531 N.W.2d 376 (Ct. App. 1995). As background, Wisconsin's independent concurrent cause rule provides that "where there are multiple causes for a loss, some of which are insured and others of which are excluded, the insured risk prevails over the excluded risk." ***American Fam. Mut. Ins. Co. v. Schmitz***, 2010 WI App 157, ¶24, 330 Wis. 2d 263, 793 N.W.2d 111. Importantly, for the rule to apply, the covered cause "must provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded risk to make it actionable." ***Smith***, 192 Wis. 2d at 332.

¶27 Our supreme court's decision in ***Bankert***, 110 Wis. 2d 469, is instructive. There, the court considered whether an insurance policy provided coverage for a father's liability for negligent entrustment of a motor vehicle to his son, who caused a crash. ***Id.*** at 479. It was undisputed that the son's liability for negligent operation of the vehicle was excluded from coverage, and the court held that the father's liability for negligent entrustment was likewise excluded. ***Id.*** As the court explained, "negligent entrustment is irrelevant unless the person to whom a thing is entrusted acts in a negligent manner …." ***Id.*** at 476; *see also **Smith***, 192

Wis. 2d at 332 (concluding that a driver's intoxication and failure to provide a helmet to the passenger were not "independent concurrent cause[s]" because "[w]ithout the operation of the snowmobile … the injury would not have occurred").

¶28    Here, although Daniel's conduct in leaving firearms and ammunition unlocked and accessible to children certainly was a cause of the accidental shooting, it was not an "independent concurrent cause" for the purpose of determining coverage.  That is, Daniel's failure to secure his firearms did not become actionable until Kahmeron possessed the gun and caused Westbrook's injury.  In other words, Daniel's negligence required the occurrence of the excluded risk—Kahmeron's criminal possession of the firearm, for which he was adjudicated—"to make it actionable." *Smith*, 192 Wis. 2d at 332.

¶29    Westbrook's final argument is about contextual ambiguity. Contextual ambiguity is the well-established concept that an insurance policy provision that is clear on its own may be rendered ambiguous when read along with other provisions in the policy. *Folkman v. Quamme*, 2003 WI 116, ¶¶19-20, 264 Wis. 2d 617, 665 N.W.2d 857.

¶30    Westbrook's argument about contextual ambiguity appears to be limited to whether there is coverage for Daniel's potential liability for negligent entrustment and negligent supervision.  Here, Westbrook argues, the "Violation Of Law" exclusion is ambiguous when considered in the context of two separate policy exclusions: one that addresses "Imputed Liability" and another that addresses "Parental Liability."   As Westbrook points out, on appeal it is

undisputed that coverage for the shooting is not precluded by either of those exclusions.[10] The crux of this argument about contextual ambiguity appears to be that an insured reading the policy might reasonably believe that the only exclusions that could potentially be relevant to the question of whether there is coverage for Daniel's liability would be the exclusions for imputed and parental liability. In other words, an insured might reasonably assume that coverage for claims against parents exists because it is not precluded by these exclusions, and the insured would not reasonably think to consider that another exclusion might bar coverage.

¶31 Westbrook's argument is misplaced for at least two related reasons. First, American Family's policy unambiguously provides that it insures against "occurrences," not against specific claims or theories of liability. Accordingly, the fact that the exclusions that address imputed and parental liability do not apply to bar coverage of an occurrence does not mean that it would be reasonable for an insured to assume that no other exclusion might apply to bar coverage. *See Stubbe*, 257 Wis. 2d 401, ¶10 (an insurance policy "must be read as a whole"). Second, Wisconsin law is clear that courts are to "analyze each exclusion separately," and that "the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it." *American Girl*, 268 Wis. 2d 16, ¶24. Here, as we have already explained, the "Violation Of Law" exclusion

---

[10] As relevant here, the Imputed Liability exclusion provides that American Family does not cover "occurrences" that arise out of, result from, or happen in connection with "any liability imputed to any insured," which the policy defines to include "the entrustment of any property or negligent supervision of any person." The Imputed Liability exclusion goes on to say that it "does not apply to Section II – Exclusions, Parental Liability." Turning to the Parental Liability exclusion, that exclusion precludes coverage for parental liability under limited circumstances if "any action or inaction of any minor child of any insured … causes any occurrence excluded" by a separate exclusion addressing aircrafts, hovercrafts, watercrafts, and certain land vehicles.

unambiguously precludes coverage for this occurrence. Thus, the fact that other policy exclusions are inapplicable does not render the policy ambiguous, nor does it reinstate coverage.[11]

¶32 For the reasons explained above, we affirm the circuit court's grant of declaratory judgment and summary judgment to American Family.

*By the Court.*—Judgment affirmed.

Recommended for publication in the official reports.

---

[11] For the first time on appeal, Westbrook also argues that, under these facts, application of the "Violation Of Law" exclusion would violate public policy. "Except in rare circumstances that are not present here, we will not address an issue that an appellant raises for the first time on appeal, because doing so undermines judicial economy and creates an incentive for parties to build in error in order to have an adverse outcome in the [circuit] court overturned on appeal." *Green v. Hahn*, 2004 WI App 214, ¶21, 277 Wis. 2d 473, 689 N.W.2d 657.