Donna HEINECKE and Estate of Charlene J. Berry, by its Special Administrator Ryan A. Berry, Plaintiffs,

AETNA HEALTH INSURANCE COMPANY and Department of Health and Human Services, Involuntary-Plaintiffs,

v.

AURORA HEALTHCARE, INC., Aurora Health Care Metro, Inc., d/b/a Aurora St. Luke's South Shore Hospital and Continental Casualty Company, d/b/a CNA Insurance, Defendants-Third-Party Plaintiffs-Co-Appellants,

v.

CREATIVE BUSINESS INTERIORS, INC., Third-PartyDefendant-Appellant,†

The MIDWESTERN INDEMNITY COMPANY and Hawkeye-Security Insurance Company, Third-Party Defendants-Respondents.

Garry A. SEIP, Plaintiff,

TRAVELERS PROPERTY CASUALTY COMPANY of America and Smith & Nephew, Inc. Welfare Benefit Plan, Involuntary-Plaintiffs,

v.

† Petition for Review denied February 19, 2014.

AURORA HEALTHCARE, INC., Aurora Health Care
Metro, Inc., d/b/a Aurora St. Luke's South Shore
Hospital and Continental Casualty Company,
Defendants-Third-Party Plaintiffs-Co-Appellants,

v.

CREATIVE BUSINESS INTERIORS, INC.,
Third-Party Defendant-Appellant,†

The MIDWESTERN INDEMNITY COMPANY and
Hawkeye-Security Insurance Company,
Third-PartyDefendants-Respondents.

Joseph G. ROMANAK and
Margaret Romanak, Plaintiffs,

Kathleen SEBELIUS, Secretary of
Department of Health and Human Services,
Involuntary-Plaintiff,

v.

AURORA HEALTHCARE, INC., Aurora Health Care
Metro, Inc., d/b/a Aurora St. Luke's South Shore
Hospital and Continental Casualty Company,
Defendants-Third-Party Plaintiffs-Co-Appellants,

v.

CREATIVE BUSINESS INTERIORS, INC.,
Third-PartyDefendant-Appellant,†

The MIDWESTERN INDEMNITY COMPANY and
Hawkeye-Security Insurance Company,
Third-Party Defendants-Respondents.

464

Carrie C. Rosa, Special Administrator of The Estate of Margaret E. Wescott, Plaintiff,

v.

State of Wisconsin Department of Health Services, Defendant,

Aurora Healthcare, Inc., Aurora Health Care Metro, Inc., d/b/a Aurora St. Luke's South Shore Hospital and Continental Casualty Company, Defendants-Third-Party Plaintiffs-Co-Appellants,

v.

Creative Business Interiors, Inc., Third-Party Defendant-Appellant,†

The Midwestern Indemnity Company and Hawkeye-Security Insurance Company, Third-Party Defendants-Respondents.

Rosemary Albrecht, individually and as Special Administrator of the Estate of Robert L. Albrecht and Scott Albrecht, Plaintiffs,

Medicare Parts A, B & D c/o Centers for Medicare Services Insurance Company and Pacificare Life and Health Insurance Co., Involuntary-Plaintiffs,

v.

Aurora Healthcare, Inc., Aurora Health Care Metro, Inc., d/b/a Aurora St. Luke's South Shore Hospital

465

and Continental Casualty Company,
d/b/a CNA Insurance, Defendants-Third-Party
Plaintiffs-Co-Appellants,

v.

CREATIVE BUSINESS INTERIORS, INC.,
Third-PartyDefendant-Appellant,†

The MIDWESTERN INDEMNITY COMPANY and
Hawkeye-Security Insurance Company,
Third-PartyDefendants-Respondents.

Court of Appeals

*No. 2012AP2469. Submitted on briefs September 3, 2013.
—Decided October 8, 2013.*

2013 WI App 133

(Also reported in 841 N.W.2d 52.)

On behalf of the third-party defendant-appellant, Creative Business Interiors, Inc. and joined by the defendants-third-party plaintiffs-co-appellants, Aurora Healthcare, Inc.; Aurora Health Care Metro, Inc. and Continental Casualty Company the cause was submitted on the briefs of *Ross A. Anderson* and *Benjamin W. Dyer* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee.

On behalf of the third-party defendants-respondents, Midwestern Indemnity Company and Hawkeye-Security Insurance Company the cause was submitted on the brief of *Thomas R. Schrimpf* of *Hinshaw & Culbertson LLP*, Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. Creative Business Interiors, Inc. ("CBI"), Aurora Healthcare, Inc., and Aurora Health Care Metro, Inc. (collectively "Aurora"), and Continental Casualty Company ("Continental") all appeal from the circuit court's order granting summary judgment and dismissing The Midwestern Indemnity Company ("Midwestern") and Hawkeye-Security Insurance Company ("Hawkeye") from this lawsuit.[1] The sole issue before this court is whether the Consumption Exception to the Fungi or Bacteria Exclusion included in CBI's insurance policies encompasses a decorative water fountain such that the exception reinstates coverage. Because we conclude that defining a decorative water fountain as "a good or product intended for consumption" does not comport with the parties' objectively reasonable expectations, we affirm.

## BACKGROUND

¶ 2. The numerous plaintiffs in this case brought a consolidated lawsuit, alleging that they contracted Legionnaire's disease after they were exposed to bacteria present in the water of a decorative water fountain ("the Fountain") located in the lobby of Aurora St. Luke's South Shore Hospital ("the Hospital"). Legionnaire's disease is a type of pneumonia caused by the *Legionella* bacteria. The bacteria grow best in warm water, like the kind found in hot tubs, cooling towers, hot water tanks,

---

[1] The appellate brief in this case was filed by CBI. Aurora and Continental moved for this court's permission to join in CBI's legal arguments and not file a separate appellate brief. We granted the motion. As such, for ease of reference, throughout this opinion we refer only to CBI when referencing the appellants' arguments.

large plumbing systems, or parts of air-conditioning systems of large buildings. Legionnaire's disease is contracted by breathing in mist or vapor that has been contaminated with *Legionella* bacteria.

¶ 3. CBI contracted with Aurora Healthcare to renovate the Hospital's lobby. As part of the project, CBI was to construct and install the Fountain at the Hospital. Consequently, after Aurora was sued by the plaintiffs, Aurora and its insurer filed a third-party complaint, naming CBI as a defendant in each of the plaintiff's actions. Midwestern and Hawkeye, as CBI's insurers, were later joined as third-party defendants under the direct-action statute.

¶ 4. To protect its business operations, CBI purchased a Commercial General Liability Policy from Midwestern ("the Midwestern Policy"). The Midwestern Policy is subject to a number of exclusions, including the Fungi or Bacteria Exclusion, which reads:

### 2. Exclusions

This insurance does not apply to:

### Fungi or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxify-

470

ing, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

However, the policy includes an exception to the exclusion, which the parties have named the "Consumption Exception." The Consumption Exception states:

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

¶ 5. CBI also purchased an Umbrella policy covering the same time period from Hawkeye ("the Hawkeye Policy"). The Hawkeye Policy contains a nearly identical Fungi or Bacteria Exclusion:

**EXCLUSION — FUNGI OR BACTERIA**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA
LIABILITY COVERAGE PART

**1.** The following are added to paragraph **3. Exclusions** under **SECTION 1 — COVERAGE**:

**a.** This insurance does not apply to:

**Fungi Or Bacteria — Bodily Injury Or Property Damage**

**(1)** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents,

471

regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

 (2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity.

The Hawkeye Policy also includes an identical Consumption Exception, which, like the Midwestern Policy Consumption Exception, states:

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

¶ 6. In July 2012, Midwestern and Hawkeye jointly moved for summary judgment, seeking a ruling from the court that the Fungi or Bacteria Exclusion contained in their respective policies excluded any coverage to CBI for the claims alleged in these consolidated cases. CBI opposed summary judgment, arguing that the Consumption Exception reinstated coverage. The circuit court granted the motion, finding that the exclusion applied and that the exception did not, thereby precluding coverage. As such, the circuit court entered a written order on October 24, 2012, dismissing all the claims against the two insurance companies. CBI appeals.

## DISCUSSION

¶ 7. The parties here all agree, for the purposes of this appeal, that the Fungi or Bacteria Exclusion in the

Midwestern and Hawkeye insurance policies precludes coverage to CBI for the lawsuits brought by the plaintiffs. However, CBI asks us to reverse the circuit court's decision dismissing Midwestern and Hawkeye from the case because CBI believes that the Fountain, as a decorative art feature, was "intended for consumption" so as to be excepted from the Bacteria or Fungi Exclusion by the Consumption Exception. We disagree.

¶ 8. This case requires us to review the circuit court's order for summary judgment. We review a grant of summary judgment by applying the standards set forth in Wis. Stat. § 802.08(2) (2011–12),[2] just as the circuit court applied those same standards. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Where, as here, the facts are not in dispute, the only question on review is whether the moving party is entitled to judgment as a matter of law. *See Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 9, 293 Wis. 2d 123, 717 N.W.2d 258.

¶ 9. When an insurance company's motion for summary judgment challenges the existence of insurance coverage, a Wisconsin court engages in a three-step inquiry. *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶¶ 23–24, 268 Wis. 2d 16, 673 N.W.2d 65. First, the court examines the facts of the insured's claim to determine whether the policy makes an initial grant of coverage. *Id.*, ¶ 24. Next, if the claim triggers the initial grant of coverage, the court examines the various exclusions in the policy in order to determine whether any exclusion precludes coverage.

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

*Id.* Finally, if a particular exclusion does apply, the court looks to see if any exception to that exclusion reinstates coverage. *Id.*

¶ 10. On this appeal, we focus only on the third step. The parties agree under the first step that the Midwestern and Hawkeye insurance policies provide coverage for CBI's business operations. They further agree under the second step, for purposes of appeal, that the policies' Fungi or Bacteria Exclusion preclude coverage for the plaintiffs' claims related to construction and installation of the Fountain. As such, we turn to the third step, and look to whether the Consumption Exception reinstates coverage. *See id.*

¶ 11. We interpret insurance policies "to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. In doing so, we interpret undefined words and phrases in an insurance policy as they would be understood by a reasonable insured, giving words and phrases their common and ordinary meaning. *Acuity v. Bagadia*, 2008 WI 62, ¶ 13, 310 Wis. 2d 197, 750 N.W.2d 817. "If words or phrases in a policy are susceptible to more than one *reasonable* construction, they are ambiguous." *Lisowski v. Hastings Mut. Ins. Co.*, 2009 WI 11, ¶ 9, 315 Wis. 2d 388, 759 N.W.2d 754 (emphasis added). If an insurance policy is ambiguous as to coverage, we will construe the policy in favor of the insured. *Froedtert Mem'l Lutheran Hosp. v. National States Ins., Co.*, 2009 WI 33, ¶ 41, 317 Wis. 2d 54, 765 N.W.2d 251.

¶ 12. Here, the Consumption Exception in both the Midwestern and Hawkeye insurance policies reinstates coverage for " 'fungi' or bacteria that are, are on,

or are contained in, a good or product intended for consumption." CBI asserts that the Fountain falls within the exception because it is "consum[ed]" when it is observed and enjoyed by Hospital patrons. In so arguing, CBI relies on WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY (1991)'s[3] third definition of "consumption" as:

> the utilization of economic goods in the satisfaction of wants or in the process of production resulting in immediate destruction (as in the eating of foods), gradual wear and deterioration (as in the habitation of dwellings), *no change aside from natural decay (as in the enjoyment of art objects),* or transformation into other goods . . .

*See id.* at 490 (emphasis added).

¶ 13. Relying on the circuit court's definition of the word "consumption," Midwestern and Hawkeye argue that the plain and ordinary meaning of the word consumption is "to eat, to drink, to use up, to consume." In so arguing, they note that their proposed definition is supported by the first two definitions given in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, which in addition to the definition relied upon by CBI, also defines consumption as "the act or action of consuming or destroying" and "the wasting, using up, or wearing away of something." *See id.* Midwestern and Hawkeye contend that their definition is the only definition that comports with the reasonable expectations of the parties and that CBI's definition leads to an absurd result. We agree with Midwestern and Hawkeye.

---

[3] The parties cite to the 1981 version of MERRIAM-WEBSTER'S THIRD INTERNATIONAL DICTIONARY. However, this court only has access to the 1991 version of Webster's dictionary cited above. Because the definitions are the same in both versions, we cite to the 1991 version available to the court.

¶ 14. To begin, CBI's argument fails because the common, ordinary meaning of the word "consume" is, as the circuit court found, "to eat, to drink, to use up, to consume." This definition comports with the first and second definitions in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY—"the act or action of consuming or destroying" and "the wasting, using up, or wearing away of something"—indicating that definition is the most common. *See id.* 490. These common and ordinary meanings of the word "consume" fail to fit the intended use of the Fountain here because the Fountain certainly was not intended to be eaten, drunk, used up, or consumed.

■■

¶ 15. CBI's definition of consumption does not comport with the parties' objectively reasonable expectations. " 'The mere fact that a word has more than one dictionary meaning, or that the parties disagree about the meaning, does not necessarily make the word ambiguous if the court concludes that only one meaning applies in the context and comports with the parties' objectively reasonable expectations.' " *See S tate Farm Mut. Auto. Ins. Co. v. Langridge,* 2004 WI 113, ¶ 41, 275 Wis. 2d 35, 683 N.W.2d 75 (citation and emphasis omitted). A court has an obligation to interpret a policy's terms " 'as they would be understood from the perspective of a reasonable person in the position of the insured,' [and] not simply adhere to any interpretation that is grammatically plausible." *Id.,* ¶ 47 (internal citations and emphasis omitted).

¶ 16. Here, the Consumption Exception's reference to "a good or product intended for consumption" clearly did not mean to encompass the observation and enjoyment of art. A reasonable insured reading the policy would understand the word "consumption" to reference a good or product that was intended to be

eaten or drank, or otherwise used up. It makes little sense that a reference to consumption, when discussing exposure to fungi and bacteria, would be referring to the observation and enjoyment of art.

¶ 17. Furthermore, by CBI's own explanation of the Fungi or Bacteria Exclusion, CBI's definition of the word "consumption" leads to an absurd result. CBI explains in its brief that the Fungi or Bacteria Exclusion "was developed to exclude coverage of mold present in buildings due to construction defects." Accepting that statement as true, we note that here, CBI is being sued for alleged defects in the Fountain's construction. Furthermore, under CBI's definition of consumption—that it encompasses the observation and enjoyment of art— the Consumption Exception could include coverage for bacteria and fungi appearing in faulty walls and decorative molding. Such a result, by CBI's own admission, is directly adverse to the purpose of the inclusion of the Fungi or Bacteria Exclusion.

¶ 18. In holding that the Consumption Exception included in the Midwestern and Hawkeye insurance policies does not encompass the observation and enjoyment of art, we reject CBI's reliance on three cases, which CBI claims broadly define the word "consumption": *Nationwide Mutual Fire Insurance Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367 (N.D. Ga. 2009); *Westport Insurance Corp. v. VN Hotel Group, LLC*, 761 F. Supp. 2d 1337 (M.D. Fla. 2010); and *Union Insurance Co. v. Soleil Group, Inc.*, 2009 WL 8652923 (D. S.C. 2009). To begin, all of these cases hail from foreign jurisdictions and therefore are not binding on this court. *See State v. Muckerheide*, 2007 WI 5, ¶ 7, 298 Wis. 2d 553, 725 N.W.2d 930. Furthermore, we do not find any of these cases persuasive as none of them deal with the issue before this court: Whether a decorative water fountain, constructed in a hospital lobby

for the aesthetic enjoyment of hospital patrons, that is, art, is a product a reasonable person would consider to fall within the Consumption Exception to the Fungi or Bacteria Exclusion. Rather, all of the cases cited by CBI discuss whether hotel amenities, like swimming pools and hot tubs, are products a reasonable person would consider to fall within the exception. *See Dillard*, 651 F. Supp. 2d at 1375 (deciding whether bacteria in a hot tub are covered by the Consumption Exception); *Westport*, 761 F. Supp. 2d at 1347 (deciding whether a spa tub and shower water are covered by the Consumption Exception); and *Soleil*, 2009 WL 8652923 at *3 (deciding whether a swimming pool and whirlpool tub are covered by the Consumption Exception). In each case cited by CBI, the insured intended the water in the swimming pool or hot tub to be used by guests and guests were expected to have physical contact with the water, unlike the Fountain here.

## CONCLUSION

¶ 19. If a party to an insurance contract "advances a grammatically plausible interpretation, but that interpretation does not square with what the insured would have understood the policy to mean . . . then that reading should be rejected as unreasonable." *Langridge*, 275 Wis. 2d 35, ¶ 48. An insurance policy is only ambiguous "where a policy is susceptible to more than one *reasonable* interpretation." *Id.* Because CBI's interpretation of the Consumption Exception—that is, that it includes the enjoyment and observation of art—is not reasonable given the context of the surrounding policy language, we affirm the circuit court.

*By the Court.*—Order affirmed.