**2020 WI App 62**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2019AP531

Complete Title of Case:

        SCOTT DHEIN,

           PLAINTIFF,

       V.

        FRANKENMUTH MUTUAL INSURANCE COMPANY AND CITY CENTRE, LLC,

           DEFENDANTS-THIRD-PARTY
           PLAINTIFFS-APPELLANTS,

        BEAMACO, LLC, SENTRY INSURANCE, A MUTUAL COMPANY AND LIBERTY MUTUAL INSURANCE COMPANY,

           DEFENDANTS,

       V.

        ACE AMERICAN INSURANCE COMPANY,

        THIRD-PARTY DEFENDANT-RESPONDENT.

Opinion Filed: September 23, 2020
Submitted on Briefs:
Oral Argument: March 4, 2020

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Davis, J. |
|     Concurred: | |
|     Dissented: | |

Appellant
ATTORNEYS:   On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *Erik J. Pless* and *Brian D. Anderson* of *Everson, Whitney, Everson & Brehm, S.C.*, Green Bay.

Respondent
ATTORNEYS:   On behalf of the third-party defendant-respondent, the cause was submitted on the brief of *Jacob A. Sosnay* of *Bascom, Budush & Ceman, S.C.*, Germantown.

**2020 WI App 62**

<table>
<tr><td>

**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 23, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

</td><td>

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

</td></tr>
</table>

<table>
<tr><td>

**Appeal No.    2019AP531**

**STATE OF WISCONSIN**

</td><td>

Cir. Ct. No.  2016CV293

**IN COURT OF APPEALS**

</td></tr>
</table>

SCOTT DHEIN,

    PLAINTIFF,

  V.

FRANKENMUTH MUTUAL INSURANCE COMPANY AND CITY CENTRE, LLC,

    DEFENDANTS-THIRD-PARTY
    PLAINTIFFS-APPELLANTS,

BEAMACO, LLC, SENTRY INSURANCE, A MUTUAL COMPANY AND
LIBERTY MUTUAL INSURANCE COMPANY,

    DEFENDANTS,

  V.

ACE AMERICAN INSURANCE COMPANY,

    THIRD-PARTY DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Manitowoc County: MARK R. ROHRER, Judge. *Reversed and cause remanded.*

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1 REILLY, P.J. City Centre, LLC (City Centre) and Frankenmuth Mutual Insurance Company[1] appeal from the summary judgment dismissal of City Centre's claim for coverage against ACE American Insurance Company (ACE). ACE is the comprehensive general liability (CGL) carrier for Broadwind, Inc., d/b/a Tower Tech Systems (Broadwind), one of City Centre's commercial tenants. City Centre is an additional insured on the ACE policy pursuant to its lease with Broadwind. The lease provided contractual indemnification, requiring Broadwind to hold City Centre harmless for any injury caused in whole or in part by Broadwind's negligence. City Centre was sued by Scott Dhein, an employee of Broadwind, following an accident on September 9, 2013. The accident occurred on property owned by City Centre but used by Broadwind on a daily basis in the course of its business. City Centre tendered coverage to ACE. ACE refused to provide a defense or coverage to City Centre.

¶2 The circuit court granted summary judgment to ACE on the grounds that any coverage under the ACE policy was excluded as Dhein's accident did not occur on premises rented by Broadwind and no evidence existed that Broadwind was causally negligent for Dhein's injuries. City Centre argues that the court erred in granting summary judgment as coverage exists under both the "additional

---

[1] Frankenmuth is City Centre's insurance carrier. Going forward, we will refer to these parties collectively as "City Centre."

insured" and "insured contract" provisions of the ACE policy and a genuine issue of material fact exists as to Broadwind's causal negligence.

¶3 We conclude that the additional insured endorsement provides coverage to City Centre for liability incurred for bodily injury caused by Broadwind's "acts or omissions," regardless of whether Broadwind is legally negligent. Even in the absence of our first conclusion, a genuine issue of material fact would exist as to Broadwind's causal negligence so as to trigger coverage for any resulting liability under the additional insured endorsement to the extent, upon further appeal, negligence is deemed a required element for coverage under the endorsement. Moreover, *Broadwind* has coverage under the same policy for certain contractual indemnification obligations it may owe to City Centre as a result of Broadwind's negligence. We also conclude, however, that City Centre cannot invoke the direct action statute to enforce Broadwind's rights to that coverage as the direct action statute only permits an action against a liability insurer to recover insurance proceeds attributable to a negligence action, and, in this case, Broadwind's underlying liability to City Centre can only result from contractual indemnity.

¶4 We recite the pertinent facts, address negligence and insurance law in Wisconsin, and analyze the additional insured and insured contract provisions of the ACE policy and how they apply in this case.

*Facts*

¶5 City Centre owns a large tract of industrial land referred to as the "peninsula" in the City of Manitowoc and leases parcels within the peninsula to various tenants. Broadwind, a wind turbine company, leased three separate parcels of land on the peninsula from City Centre. Land between the various tenants was

3

available for use by the tenants and is described as "common areas" in Broadwind's lease. The "common areas" are owned by City Centre, and City Centre is required to maintain and repair the "common areas."

¶6      Dhein was operating a snorkel lift on September 9, 2013, when a tire of the snorkel lift fell into a drainage basin whose grate had become dislodged. The drainage basin is located in the parking lot, which is adjacent to and between buildings leased by Broadwind and another tenant. The parking lot is "common area" land that Broadwind employees used on a daily basis to move tower sections between their parcels via large forklifts and machines. Broadwind admitted that their employees' use of large forklifts and heavy equipment to move tower sections would occasionally dislodge the grate covering the drainage basin and that snowplowing would also dislodge the grate "just about every time they plowed snow until there was a good base."[2] A maintenance manager for Broadwind testified that the grate was dislodged on a number of occasions prior to Dhein's accident and that he or others would replace the grate. The maintenance manager described the drainage basin area as "somewhat a shared responsibility. The grounds was City Centre's responsibility. For a grate being out of place like that, we would just put it back in place." Broadwind never notified City Centre that the grate was being dislodged—or that it was defective—and never asked City Centre to fix the defective grate.

¶7      The lease between City Centre and Broadwind required Broadwind to carry a CGL policy with City Centre as an "Additional Named Insured," insuring both Broadwind and City Centre "against injury to … person … arising out of the

---

[2] A maintenance manager for Broadwind also "blew his tire" on the open drainage basin prior to Dhein's accident.

use and occupancy of the Premises." Broadwind was also required by the lease to "protect[,] indemnify, save, and keep harmless" City Centre "from any and all claims arising out of or from any accidents or other occurrences *on or about* the Premises causing injury … due *directly or indirectly* to negligent use of the Premises" by Broadwind or its employees. (Emphasis added.)

¶8 ACE issued the required CGL policy to Broadwind (the ACE policy), which provided coverage to additional insureds. The ACE policy provided, in relevant part:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
>
> 1. In the performance of your ongoing operations; or
>
> 2. In connection with your premises owned by or rented to you.

Pursuant to the policy language, the coverage for an additional insured extended only to liability for injuries "caused, in whole or in part, by [Broadwind's] acts or omissions" or those acting on behalf of Broadwind. Coverage was further limited to "acts or omissions" that Broadwind or its actors undertook "[i]n the performance" of its "ongoing operations" or "[i]n connection with" "premises owned by or rented" by Broadwind.

¶9 The ACE policy contained standard CGL language indemnifying Broadwind for any liability it might incur for "bodily injury" caused by an "occurrence." It also included a standard contractually-assumed liability exclusion which read as follows:

> **2. Exclusions**

This insurance does not apply to:

….

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement….

The ACE policy defines "insured contract" as "[a] contract for a lease of premises" or that "part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

¶10    Dhein filed a personal injury lawsuit against City Centre, Beamaco, LLC,[3] and their respective insurers, alleging negligence and safe place violations. After initial discovery, City Centre filed a Third-Party Summons and Complaint against ACE, alleging that ACE was liable to City Centre as an additional insured and under the insured contract exception to the contractually-assumed liability exclusion referenced above, that ACE was liable for any negligence of Broadwind employees related to Dhein's injury, and that ACE owed it a duty of defense.

¶11    As relevant to this appeal, ACE moved for declaratory and summary judgment, arguing that City Centre did not have coverage. The circuit court granted

---

[3] Beamaco, LLC, also leased property on the peninsula adjacent to the location where Dhein's accident occurred. The circuit court dismissed Dhein's claims against Beamaco by its February 8, 2019 order. The parties do not challenge this dismissal on appeal.

6

summary judgment to ACE on the grounds that any coverage that did exist was excluded as Dhein's accident did not occur on premises rented by Broadwind and no evidence existed that Broadwind was causally negligent for Dhein's injuries. The circuit court found that City Centre had constructive notice of the defective grate given the length of time the grate was being dislodged. City Centre appeals.

*Standard of Review and Principles of Insurance Contract Interpretation*

¶12 At issue in this case is whether City Centre and Broadwind have coverage under the ACE policy. Interpretation of an insurance contract is a question of law that we review de novo. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. In reviewing the ACE policy, we are guided by the familiar principles that insurance policies are construed as they would be understood by a reasonable person in the position of the insured, and that any ambiguities are construed in favor of coverage, and against the insurer who drafted the policy. *See Heineke v. Aurora Healthcare, Inc.*, 2013 WI App 133, ¶11, 351 Wis. 2d 463, 841 N.W.2d 52. However, we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate, underwrite, or receive a premium. *American Girl*, 268 Wis. 2d 16, ¶23. In applying these principles, we follow a three-step process: (1) "we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage"; (2) if a covered claim is triggered, we then examine whether any exclusions preclude coverage; and (3) we examine whether any exception to an exclusion reinstates coverage. *Id.*, ¶24.

¶13 On appeal, our review of a decision on summary judgment is de novo, applying the same methodology as the circuit court. *Id.*, ¶22. Summary judgment is appropriate if there are no genuine issues of material fact in dispute and a party is

entitled to judgment as a matter of law. *Id.* If there are disputed material facts or undisputed material facts from which reasonable alternative inferences can be drawn, then the matter is to be determined by the fact finder at trial. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶21-24, 241 Wis. 2d 804, 623 N.W.2d 751; *see also Delmore v. American Family Mut. Ins. Co.*, 118 Wis. 2d 510, 512, 348 N.W.2d 151 (1984).

¶14 We now address the additional insured and insured contract provisions of the ACE policy and apply them to the facts presented.

*The Additional Insured Endorsement Provides Coverage to City Centre for Liability It Incurs as a Result of Broadwind's "Acts or Omissions," Regardless of Whether Broadwind is Legally Negligent*

¶15 The additional insured endorsement issued to Broadwind makes City Centre an insured, able to enforce the policy, but only in situations involving liability it incurs as a result of its relationship with the named insured, Broadwind. First, City Centre's liability (or potential liability that might trigger a defense) must stem from bodily injury caused by an "act[] or omission" of *Broadwind*, the named insured. Second, the "act[] or omission" must occur "[i]n the performance of [Broadwind's] ongoing operations" or "[i]n connection with [Broadwind's] premises owned by or rented to [Broadwind]."

¶16 Our threshold question, then, concerns the interpretation of the phrase "acts or omissions" in the endorsement. The parties have treated this issue as involving the question of whether Dhein's injuries resulted from Broadwind's *negligence*, but we cannot find from the plain language that the endorsement is so limited, particularly in light of the rules of construction referenced above. The language simply provides liability coverage to the additional insured for bodily injury that is "caused in whole or in part by" an "act or omission" of the named

8

insured, Broadwind, or those acting on its behalf (such as its employee, Dhein). This suggests that if some act or omission of Dhein or Broadwind caused Dhein's injury then whatever liability might exist on the part of City Centre in contributing to that injury is covered. Nothing in this language restricts coverage to liability for the named insured's negligence or is otherwise "fault-based" as it relates to Broadwind.

¶17 In reaching this conclusion, we are guided by cases from other jurisdictions, including a federal case from the Eastern District of Wisconsin applying Wisconsin law, *Ryder Truck Rental, Inc. v. National Fire Ins. Co. of Hartford*, 246 F. Supp. 3d 1231 (E.D. Wis. 2017), in which the court rejected the notion that the additional insured language requires an element of fault on the part of the named insured. In *Ryder Truck Rental*, the plaintiff was an employee of Rockline Industries, LLC, which had leased a truck from Ryder. *Id.* at 1233-34. The employee was injured when he stepped onto a step attached to the truck. *Id.* He sued Ryder, claiming that it was negligent in maintaining the step. *Id.* The lease required Rockline to provide liability insurance to Ryder, making Ryder an additional insured with respect to liability it incurred as a result of the "acts or omissions" of Rockline or its employees. *Id.* at 1237-38. The insurer denied coverage, claiming that this language only allowed coverage to Ryder for Rockline's *negligence*. *Id.* at 1238. The district court disagreed, finding that so long as the injury arose out of an "act or omission" of Rockline or its employee, then Ryder was covered, and nothing in the policy language required that the act or omission be accompanied by fault or negligence:

> National argues that Ryder cannot be an "insured" under this reasoning because the [employee's] complaint does not allege that [the employee] was negligent or otherwise at fault for his injuries; rather, it alleges that Ryder was negligent in repairing the step. However, while it is true that the

> [employee does] not allege that [the employee's] own negligence or other wrongdoing contributed to his injuries, nothing in the lessor endorsement (or any other part of the policy) states that a lessor is an "insured" for bodily injury resulting from acts or omissions of the named insured's employee only if the employee's act or omission was negligent or otherwise blameworthy. Rather, the endorsement just says "acts or omissions," and the policy does not define these terms at all, much less in a way that incorporates an element of fault.

*Id.*

¶18 We agree and adopt this plain language reasoning, which also appears consistent with how most other courts have construed this language. *See, e.g.*, ***Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co.***, 238 F. Supp. 3d 604, 613-14 (S.D.N.Y. 2017) (noting that the policy "does not condition coverage on fault by [the named insured or its employee]; rather "the concept of causation turns on the relationship of [the named insured or its employee] to the worksite"); ***Great W. Cas. Co. v. National Cas. Co.***, 53 F. Supp. 3d 1154, 1172 (D. N.D. 2014) ("There is no mention in the language of the endorsement that the acts or omissions must be 'negligent' or 'intentional.' In other words, fault is not an element."); ***PAR Elec. Contractors, Inc. v. Blueline Rental, LLC***, No. 2:16-CV-0246-TOR, 2017 WL 374477, at *24 (E.D. Wash. Jan. 25, 2017) ("Because a plain reading of the insurance contract covers acts or omissions, not just *negligent* acts or omissions, the Court will decline Old Republic's invitation to insert the word 'negligent' into the contract where it was not provided, especially where that would work to limit the insured's coverage and where the insurance company very well could have included the word 'negligent' when drafting the policy."); *see also* ***American Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.***, 278 F. Supp. 3d 1025, 1041 (E.D. Tenn. 2017) ("Here, the phrase 'caused, in whole or in part,' is not ambiguous. In effect, it assigns Norfolk additional insured status if the accident was caused by East Coast's

work, act, or omission in some way, even partially. Accordingly, it must be determined whether East Coast caused the accident.").[4]

¶19 In light of these authorities, we conclude that, while City Centre's status as an additional insured depends on whether it faces liability for bodily injury caused by the "acts or omissions" of Broadwind or its employees, the plain language of the ACE policy does not require a finding of fault/negligence by Broadwind (or its employees). Dhein is indisputably a Broadwind employee. His injury

---

[4] We note that at least one published decision has reached a contrary conclusion. *See Bacon Constr. Co., Inc. v. Arbella Prot. Ins. Co., Inc.*, 208 A.3d 595, 600 (R.I. 2019) ("We are satisfied that the endorsement is fault-based …. [T]he endorsement, by including the terms 'liability' and 'bodily injury caused by' one's acts or omissions, includes a negligence trigger."). We disagree with *Bacon Construction*, as the court's reasoning appears conclusory and lacks an analysis of why the policy language led to the result reached. Here, had the additional insured endorsement simply indemnified City Centre for Broadwind's acts or omissions that result in liability of the additional insured, the endorsement could possibly be read to require a fault-based trigger, but that is not what the endorsement says. Rather, City Centre is an additional insured for any liability it incurs for bodily injury so long as the injury is caused in whole or part by some act or omission of Broadwind. Nothing requires that the additional insured's liability be based on any actionable conduct of the named insured, a point that appears to have been recognized by the majority of courts addressing this language in the context of injury suffered by the named insured's employee.

We acknowledge an unpublished decision from this court which appears to read a negligence trigger into this policy language, but its analysis as to the issue is lacking. *See Ritter v. Penske Trucking Leasing Co., L.P.*, No. 2011AP2285, unpublished slip op. ¶23 (WI App Dec. 6, 2012). *Ritter*'s reference to a negligence trigger was unsupported and made in passing, a point the *PAR Electrical Contractors* court noted in denying a reconsideration motion filed in connection with the decision referenced above. *See PAR Elec. Contractors, Inc. v. Blueline Rental, LLC*, No. 2:16-CV-0246-TOR, 2017 WL 2727901, at *2 n.1 (E.D. Wash. Mar. 17, 2017) ("The *Ritter* case does not even directly address the issue—rather, it focuses on a lack of an allegation in the underlying complaint and reasonable expectations—and its conclusion that the policy was limited to negligence was not explained or supported, contrary to the cases this Court references in its Order."). The court in *Ryder Truck Rental* also noted that whether *Ritter* actually adopted a negligence or fault-based trigger "is not clear" but in any event found the case to have "no persuasive value" on this point since "the court did not give any reasons for reading an element of fault into the 'acts or omissions' language in the lessor endorsement (if in fact it read such an element into that language)." *Ryder Truck Rental, Inc. v. National Fire Ins. Co. of Hartford*, 246 F. Supp. 3d 1231, 1239 (E.D. Wis. 2017).

indisputably occurred as a result of his act of driving over the grate in question. As a result, City Centre satisfies the "acts or omissions" element as a matter of law and has coverage under the ACE policy.[5]

*Even If the Additional Insured Endorsement Required a Finding of Negligence by Broadwind, There is a Genuine Issue of Material Fact as to Whether Dhein's Injury was Attributable to any Such Negligence*

¶20    As the preceding discussion makes clear, City Centre's additional insured status depends on whether its liability is for bodily injury that is caused by an "act or omission" of Broadwind or its employees, without regard to whether City Centre's liability stems from Broadwind's "negligence." Nonetheless, because a negligence trigger for this endorsement was assumed by the parties, and for purposes of providing guidance in the event of any further review of this matter on appeal, we deem it appropriate to address the trial court's summary judgment finding that there could be no negligence as a matter of law. We conclude that there are disputed issues of fact on this point, which would have required a trial if this endorsement were construed to contain a negligence trigger.

---

[5] In reaching this result, we recognize that the lease limits Broadwind's indemnity obligations to City Centre for injury "due directly or indirectly to negligent use of the Premises or any part thereof" by Broadwind. Moreover, the additional insured endorsement expressly states that the insurance afforded to City Centre will not be broader than what is required by any contractual provision by which Broadwind is to make City Centre an additional insured. The combination of these two provisions cannot, however, change the interpretation of the endorsement because the indemnification provision says nothing about the insurance that Broadwind must procure covering City Centre. To the contrary, the lease contains an entirely *separate* insurance requirement provision, which simply requires Broadwind to procure commercial general liability insurance insuring both itself and City Centre against injury "arising out of the use and occupancy of the Premises" without regard to Broadwind's negligence. This case is thus governed by the principle that limiting language in an indemnity agreement does not affect coverage under an additional insured endorsement absent explicit contrary language in either the contract or the policy—or, put another way, the court must consider the terms of an underlying contract only to the extent the policy language directs it to do so. *See **American Cas. Co. v. General Star Indem. Co.***, 24 Cal. Rptr. 3d 34, 46-48 (Cal. Ct. App. 2005); ***In Re Deepwater Horizon***, 470 S.W.3d 452, 464 (Tex. 2015).

¶21    Negligence exists when there is: (1) the existence of a duty of care; (2) a breach of that duty of care; (3) a causal connection between the duty breached and the harm caused; and (4) actual loss or damages. ***Nichols v. Progressive N. Ins. Co.***, 2008 WI 20, ¶11, 308 Wis. 2d 17, 746 N.W.2d 220; *see also* ***Hocking v. City of Dodgeville***, 2009 WI 70, ¶10, 318 Wis. 2d 681, 768 N.W.2d 552. Wisconsin has adopted the minority view from ***Palsgraf v. Long Island Railroad Co.***, 162 N.E. 99 (N.Y. 1928), that everyone owes a duty to the world at large. ***Hocking***, 318 Wis. 2d 681, ¶12. That duty, however, is not unlimited and "is restricted to what is reasonable under the circumstances." ***Id.*** In this case, the parties do not dispute that Dhein was injured and that Dhein incurred an actual loss. We address the remaining elements of a negligence claim below.

¶22    As everyone owes a duty to the world at large, we begin by accepting that Broadwind owed a duty of care to Dhein. The duty of care involves two aspects: the existence of a duty of ordinary care and the assessment of what ordinary care requires under the circumstances. ***Id.***, ¶11. In this case, there is a genuine issue of material fact as to Broadwind's duty of care and whether Broadwind breached that duty. Broadwind knew of the defective grate prior to Dhein's accident and knew that its operation of heavy equipment on a daily basis in the vicinity of the grate would occasionally cause the grate to become dislodged, leaving a hole in the pavement. Broadwind had notice prior to Dhein's accident that the hole left by the dislodged grate had caused damage to one of its employee's vehicles. Broadwind acknowledged a "shared responsibility" for maintaining the grate (perhaps because Broadwind employees were the ones who were dislodging the grate from the drainage basin with the heavy equipment) and acknowledged that it never informed City Centre of the defective grate and never asked City Centre to fix the grate. This could imply that Broadwind accepted the responsibility of making sure the grate

was on the drainage basin and/or that Broadwind's acts precluded knowledge on City Centre's part. Therefore, Broadwind's acts and omissions in this case foreseeably created an unreasonable risk to Dhein and others.

¶23 Furthermore, given Broadwind's knowledge of the defective condition of the grate and the fact that Dhein was injured when his snorkel lift fell into the hole of the drainage basin as a result of the grate being dislodged, a clear causal connection has been shown between Broadwind's breached duty and the harm caused.

¶24 ACE argues that Broadwind cannot be negligent as City Centre cannot delegate its responsibility to inspect and maintain its premises, citing to *Barry v. Employers Mutual Casualty Co.*, 2001 WI 101, ¶42, 245 Wis. 2d 560, 630 N.W.2d 517. The circuit court held that City Centre knew or should have known that the condition of the basin constituted a dangerous condition. The fact that City Centre, as owner of the common area, also had a duty of care owed to Dhein does not eliminate Broadwind's duty.[6] While a landowner may not delegate its responsibility

---

[6] Furthermore, and as suggested by the preceding authorities cited *supra* ¶¶17-18, all of which involve lawsuits by a named insured's employee against an additional insured, the fact that Dhein could not sue Broadwind, his employer, in tort pursuant to Wisconsin's Worker's Compensation Act does not change our analysis of Broadwind's duty of care under negligence law or, correspondingly, City Centre's rights as an additional insured under the ACE policy, which by its terms directly provides contractual coverage from ACE to City Centre for liability for bodily injury caused by Broadwind's acts or omissions.

under the safe place statute,[7] the safe place statute does not extinguish City Centre's contractual rights under the ACE policy that ACE will provide coverage for Broadwind's acts or omissions. While constructive notice applies to Dhein's safe place claim, it does not apply to common law negligence and does not change the fact that Broadwind owed a duty of care to Dhein. Both City Centre and Broadwind owed a duty of care to Dhein given the facts presented.

¶25 Accordingly, under Wisconsin's standard of duty, we have no hesitation in concluding that based on the evidence, a jury could find that

---

[7] WISCONSIN STAT. § 101.11 (2017-18), the safe place statute, "is a negligence statute that, rather than creating a distinct cause of action, … instead establishes a duty greater than that of ordinary care imposed at common law." *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶18, 245 Wis. 2d 560, 630 N.W.2d 517. The statute requires that "[e]very employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe." Sec. 101.11(1) (2017-18). "Safe" is defined as "such freedom from danger to the life, health, safety or welfare of employees or frequenters, or the public, or tenants, or fire fighters, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to adjacent buildings or other property, as the nature of the employment, place of employment, or public building, will reasonably permit." WIS. STAT. § 101.01(13) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"The duties imposed on employers and property owners under the safe place statute are non-delegable." *Barry*, 245 Wis. 2d 560, ¶42. "[T]he person who has that duty [under the safe place statute] cannot assert that another to whom he has allegedly delegated the duty is to be substituted as the primary defendant in his stead for a violation of safe place provisions. *Under any circumstance, it is the owner or the employer who must answer to the injured party*." *Id.* (alteration in original; citation omitted). Under safe place law, an injured party recovers from property owners; however, a property owner may seek contribution from other negligent parties. *Id.*, ¶¶43-44.

Broadwind was causally negligent, in whole or in part, for Dhein's accident.[8] The inferences that could be drawn from the evidence are many, including a finding that City Centre was negligent in failing to properly inspect its property and that Broadwind was negligent in failing to give City Centre notice of the known danger in an area of "shared responsibility" with City Centre.

*City Centre Satisfies the Remaining Elements Necessary to Establishing Its Status as an Additional Insured Under the ACE Policy*

¶26 The final step in our analysis of the additional insured provision concerns the remaining language that must be satisfied before City Centre can be considered an additional insured. Specifically, the "acts or omissions" that must be the cause of City Centre's liability must also occur "[i]n the performance of [Broadwind's] ongoing operations" or "[i]n connection with" the premises leased by Broadwind. Broadwind leased three buildings on the peninsula and there is no

---

[8] We recognize that "even if all the elements for a claim of negligence are proved, or liability for negligent conduct is assumed by the court, the court nonetheless may preclude liability based on public policy factors" as "negligence and liability are distinct concepts." *Nichols v. Progressive N. Ins. Co.*, 2008 WI 20, ¶19, 308 Wis. 2d 17, 746 N.W.2d 220 (citations omitted). "The prevalence of a public policy factor analysis, however, does not eliminate consideration of the four elements of negligence." *Hocking v. City of Dodgeville*, 2009 WI 70, ¶11, 318 Wis. 2d 681, 768 N.W.2d 552.

> Some of the public policy reasons for not imposing liability despite a finding of negligence as a substantial factor producing injury are: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979); *see also Nichols*, 308 Wis. 2d 17, ¶¶22-27. While we raised this issue and requested supplemental briefing, upon review, we do not see that public policy would preclude a negligence claim under the facts presented here.

dispute that Dhein's injury occurred in the common area adjacent to Broadwind's leased premises while Dhein was driving the snorkel lift between worksite locations as part of his regular work activities.

¶27 The circuit court concluded that there was no coverage for City Centre under the ACE policy as the accident occurred in the common area adjacent to the leased premises and as Broadwind "is in the business of making turbines, not maintenance of grates and basins." We disagree that simply because the accident occurred in the common area adjacent to the leased premises that there can be no coverage to City Centre under the ACE policy.

¶28 The phrase "ongoing operations" should not be so narrowly defined as to require Broadwind to be in the business of "maintenance of grates and basins" in order for the policy language to apply. We interpret an insurance contract as it would be understood by a reasonable person in the position of the insured. *American Girl*, 268 Wis. 2d 16, ¶23. In interpreting insurance policy language, we seek to "give effect to the intent of the contracting parties." *Id.* The phrase "ongoing operations" is not defined in the ACE policy. In *Mikula v. Miller Brewing Co.*, 2005 WI App 92, ¶21, 281 Wis. 2d 712, 701 N.W.2d 613 (citation omitted), this court determined that "'[o]ngoing operations,' … can be understood to mean the 'doing or performing of a practical work or of something involving practical application of principles or processes … as a part of a series of actions' … 'that is actually in process.'" In other words, the court explained, the phrase could "reasonably be interpreted to refer to the ongoing performance of the work" performed for the additional insured. *Id.* While the parties in *Mikula* had contracted for work to be performed between the parties, and did not involve a lease agreement, we conclude that the same definition can apply to the work performed by Broadwind.

17

¶29 Broadwind employees, like Dhein, were required to move large equipment within the common area to perform their work on the leased premises, and Broadwind utilized the common area between its three parcels in the normal course of its operations. Case in point, Dhein was operating heavy machinery in the common area when his accident occurred. Broadwind knew of the hazard posed by the drainage basin as its own large equipment had previously dislodged the grate, creating an open hole in the ground, in the course of moving the equipment between worksites within the leased premises. Further, Broadwind employees would regularly replace the grate when they noticed it was dislodged, in what an employee called a "shared responsibility." Therefore, we conclude that Dhein driving the snorkel lift between worksites and employees replacing the grate were within the performance of Broadwind's "ongoing operations."

¶30 Second, we conclude that the common area where the accident occurred was "in connection with" premises rented by Broadwind. The ACE policy does not define the phrase "in connection with." The word "connection" is defined as a "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)." *Connection*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged ed. 1993); *see also **Melby v. Metropolitan Prop. & Cas. Ins. Co.***, No. 2013AP12, unpublished slip op. ¶15 (WI App Feb. 12, 2015) ("[T]he word 'connection' is defined as 'a relationship; association; ... causal relationship.'" (citation omitted)). This definition is similar to the definition for the phrase "arising out of," used in liability insurance policies, which has been read "broadly" and is "commonly understood to mean originating from, growing out of, or flowing from, and require[s] only that there be some causal relationship between the injury and the risk for which coverage is provided." *See **Mikula***, 281 Wis. 2d 712, ¶21 (alteration in original; citation omitted). Thus, based

on those definitions, we read "in connection with" broadly and conclude that there must be a "causal relationship" between the bodily injury caused, in whole or in part, by Broadwind's acts or omissions and the leased premises. Driving large machinery in the common area between the leased worksites in the normal course of Broadwind's operations satisfies that causal relationship. Indeed, given the separation of the leased buildings and the nature of Broadwind's operations requiring them to move large machinery between the buildings, we agree with City Centre that it would be disingenuous to assert that Broadwind intended to check its insurance coverage at the door of each building.

### City Centre Does Not Have Standing to Assert the Insured Contract Exception to the Contractually-Assumed Liability Exclusion Under Wisconsin's Direct Action Statute

¶31 The second coverage theory asserted in this case pertains to coverage that might be afforded to Broadwind for City Centre's contractual indemnification claim against it for Broadwind's negligence. City Centre seeks to avail itself of that coverage by way of Wisconsin's direct action statute, WIS. STAT. § 632.24. We start by analyzing Broadwind's right to coverage and then whether City Centre has standing to assert those rights under the direct action statute.

¶32 Applying the three-part coverage methodology referenced above, there can be no question that Broadwind's potential liability falls within the coverage grant of the policy: Broadwind is facing potential liability for "bodily injury" (Dhein's injuries) caused by an "occurrence" (the alleged accidental negligence involving the grate discussed above). Broadwind's liability stems from the indemnification agreement it entered into with City Centre as Dhein did not (and per Wisconsin's worker's compensation law, could not) sue Broadwind directly. The second step addresses exclusions, and, in this case, the ACE policy has a contractually-assumed liability exclusion for "'[b]odily injury' or 'property

damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." We move then to the third step in the methodology to determine whether an exception restores coverage. The ACE policy provides that the contractually-assumed liability exclusion does not apply if the contractually-assumed liability is for damages "[a]ssumed in a contract or agreement that is an 'insured contract.'" An "insured contract" is defined by the policy as "[a] contract for a lease of premises" as well as

> [t]hat part of any other contract or agreement pertaining to [Broadwind's] business … under which [Broadwind] assume[s] the tort liability of another party to pay for "bodily injury" … to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

The lease between Broadwind and City Centre is an insured contract as both a "contract for a lease of premises" and an agreement in which Broadwind agreed to assume City Centre's tort liability to pay for bodily injury.

¶33 In *American Girl*, our supreme court addressed the "contractually-assumed liability exclusion" and concluded that where an insured (Broadwind) has contractually assumed the liability of a third-party (City Centre), such as in an indemnification or hold harmless agreement, the policy does not exclude coverage for liabilities the insured is exposed to under the terms of the contracts it makes generally. *See American Girl*, 268 Wis. 2d 16, ¶58. Broadwind's liability is by virtue of the indemnification/hold harmless provision, which provides:

> [Broadwind] agrees that it will at all times protect[,] indemnify, save, and keep harmless [City Centre] against and from any and all claims arising out of or from any accidents or other occurrences on or about the Premises causing injury to any person or persons or property (including but not limited to any injuries indirectly or directly caused by lack of security), whomsoever or whatsoever and due directly or indirectly to negligent use of the Premises or any part thereof by [Broadwind], its employees, agents, or invitees.

Broadwind has coverage for this liability because it has coverage under the ACE policy for "bodily injury" caused by an "occurrence" (accident). Dhein's accident occurred "on or about the Premises" in an area of "shared responsibility" "due directly or indirectly" to Broadwind's negligence.[9]

¶34 Our conclusion that Broadwind has coverage for its indemnification obligations does not necessarily lead to the conclusion that City Centre has the right to access that coverage under Wisconsin's direct action statute. Indeed, we conclude that, under the facts of this case, it cannot. And while this may not make a difference to ultimate recovery from ACE, in light of our conclusion that City Centre is an additional insured and therefore has coverage under the ACE policy as a matter of law, we address the issue to clarify that no similar right exists to sue ACE directly under Wisconsin's direct action statute.[10]

¶35 WISCONSIN STAT. § 632.24 confers standing to sue on a "policy of insurance covering liability to others for negligence" to any "persons entitled to

[9] It is important to note that the coverage for Broadwind's indemnification obligations, unlike its coverage under the additional insured provision, is limited to injury caused by Broadwind's negligence since, as previously noted, the indemnification agreement is expressly so limited. Specifically, the indemnification obligation in the lease provides that Broadwind must indemnify City Centre for injuries "due directly or indirectly to negligent use of the Premises or any part thereof" by Broadwind.

[10] Aside from addressing this issue for the sake of completeness, we note that there are substantive implications to whether City Centre's right to seek coverage arises by virtue of its status as an additional insured versus its right to tap into Broadwind's coverage under the direct action statute. First, City Centre's rights as an insured implicate both ACE's right and duty to defend, as opposed to simply a right to seek coverage that Broadwind might have for reimbursement of defense costs it might be required to pay under its indemnification agreement. Second, per the terms of the policy, coverage under the insured contract exception to the contractually-assumed liability exclusion would cause any defense costs paid by ACE to erode the limits of the ACE policy (other than in certain narrow circumstances we need not delve into here). That is not the case with respect to defense costs that ACE may be required to fund in defending City Centre as its insured.

recover against the insured … for injury to persons … irrespective of whether the liability is presently established or is contingent." On its face, the statute appears applicable: the ACE policy is a "policy of insurance covering liability to others for negligence" and City Centre is a "person[] entitled to recover" from Broadwind for "injury to persons." *See* § 632.24. As ACE points out, however, our court has previously held that a direct action under § 632.24[11] cannot be brought with respect to contract claims. *See **Rogers ex rel. Rogers v. Saunders***, 2008 WI App 53, 309 Wis. 2d 238, 750 N.W.2d 477.

¶36 In ***Rogers***, a patient brought a medical malpractice claim against a health care provider. *Id.*, ¶3. The provider's liability insurer, who was subrogated to the provider, filed a third-party complaint, seeking contribution or indemnification against the liability insurer for the staffing agency that employed the nurse who had provided care, arguing that it was entitled to proceed directly against the staffing agency's insurer under the direct action statute.[12] *Id.* The only basis for the staffing agency's liability arose by contractual indemnity owed by the staffing agency to the health care provider because, this court concluded, any

---

[11] We note that Wisconsin has two direct action statutes, WIS. STAT. §§ 632.24 and 803.04(2). The former is often described as "substantive"; the latter "procedural." ***Decade's Monthly Income & Appreciation Fund v. Whyte & Hirschboeck, S.C.***, 164 Wis. 2d 227, 232-35, 474 N.W.2d 766 (Ct. App. 1991). The parties do not appear to address § 803.04.

[12] The clause at issue in the agreement between the staffing company and the health care provider read:

> Contractor agrees to indemnify and hold harmless the Client, its officers, agents, directors, trustees, and employees from claims and liabilities (including reasonable attorneys' fees and expenses incurred in the defense thereof) relating to any property damage, personal injuries or death ("Damages") arising out of its [sic] acts or omissions of Contractor in connection with Contractor's duties and services provided under this Agreement.

***Rogers ex rel. Rogers v. Saunders***, 2008 WI App 53, ¶7, 309 Wis. 2d 238, 750 N.W.2d 477 (alteration in original).

separate claim against the nurse or her insurer for negligence was statutorily precluded under a liability limitation contained in WIS. STAT. § 655.23(5) (2005-06). This limitation, we concluded, was fatal to the provider's insurer's effort to invoke the direct action statute against the staffing company's insurer since that statute "allows direct actions against a negligence insurer for negligence claims. It does not allow a plaintiff in a contract action to sue the defendant's insurer." *Rogers*, 309 Wis. 2d 238, ¶8.

¶37 Despite some superficial distinctions, *Rogers*' overriding premise is on all fours with this case. Because Dhein is an employee of Broadwind, he has no claim against Broadwind for negligence pursuant to the worker's compensation bar in WIS. STAT. § 102.03(2). Likewise, Wisconsin precedent holds that the worker's compensation bar applies to common law contribution claims that third- party defendants might assert against the injured party's employer for the employer's negligence. *See Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 177-78, 290 N.W.2d 276 (1980). Thus, City Centre has no claim of negligence against Broadwind; the *only* potentially viable claim it could have that might trigger an exception to the contractually-assumed liability exclusion is for contractual indemnity, and, in fact, that is the only exception it has asserted.[13] Suffice it to say that such a claim does not allow the indemnified party to file a direct action against

---

[13] The contractually-assumed liability exclusion contains a separate carve-out for "liability that would be imposed by law in the absence of any contract or agreement." The worker's compensation bar, as extended to third-party contribution claims by *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 290 N.W.2d 276 (1980), precludes the applicability of this exception.

We note that a claim for contractual indemnity by City Centre against Broadwind itself is not barred, although City Centre has not asserted such a claim. *See Schaub v. West Bend Mut.*, 195 Wis. 2d 181, 183, 536 N.W.2d 123 (Ct. App. 1995); *see also Larsen v. J. I. Case Co.*, 37 Wis. 2d 516, 520, 155 N.W.2d 666 (1968).

the indemnitor's insurer in light of our holding in ***Rogers***, to which we are bound. We therefore conclude that, while Broadwind's indemnity obligations encompass City Centre's alleged negligence, and the ACE policy covers Broadwind's indemnity obligations, City Centre has no standing to seek that coverage under WIS. STAT. § 632.24.[14]

*Conclusion*

¶38 ACE agreed, per the additional insured endorsement in its policy with Broadwind, to cover City Centre with respect to liability for bodily injury caused in whole or part by "acts or omissions" of Broadwind or those acting on its behalf. Dhein's accident was at least partially caused by the "acts or omissions" of Broadwind or one acting on its behalf, namely Dhein. That the accident occurred

---

[14] ACE contends that even if City Centre is an additional insured, coverage is precluded by late notice of the accident and resulting claim. We do not address ACE's argument that City Centre failed to give timely notice of the claim or whether ACE was prejudiced by such failure as these are issues that should be addressed by the trial court on remand. We do note that the policy's notice of occurrence provision applies only to the named insured and any failure to provide such a notice cannot be attributed to the additional insured. In contrast, the policy separately requires that the named insured "and any other involved insured must … immediately send [ACE] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" From the record, it appears that the third-party suit against ACE was the first notice of the incident or any claim arising therefrom and that this suit was filed approximately fourteen months after Dhein's original suit against City Centre. The questions on notice will therefore be when was it reasonably possible for City Centre to provide notice and whether notice of the claim was provided as soon as reasonably possible, and if it was not, whether ACE was prejudiced by the fourteen-month delay in providing notice. *See* WIS. STAT. § 632.26. In addressing this issue, factual questions will need to be resolved concerning, among other things, when City Centre first became aware of the incident and any claim against it, when it became aware of the policy at issue sufficient to allow it to provide such notice, and whether the insurer was prejudiced by any late notice of the claim.

on premises owned by City Centre does not preclude such coverage.[15]  We make clear that ACE's coverage obligation stems from the additional insured provision, and not from the insured contract provision, since the direct action statute does not permit City Centre to seek insurance coverage separately available to Broadwind for liability that exists under contract.  We reverse and remand for proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded.

---

[15]  The parties do not address any issues concerning ACE's duty to defend, and to the extent this is an issue, it would need to be addressed on remand.  We note that any such duty would not arise unless and until the underlying suit was tendered to ACE, and this would preclude recovery of pre-tender defense costs.  *See **Towne Realty, Inc. v. Zurich Ins. Co.***, 201 Wis. 2d 260, 271, 548 N.W.2d 64 (1996) ("Zurich had no duty to defend until it had been put on notice that there was a claim against the Insureds.").